DRAVO CORPORATION, a Corporation of the State of Delaware, Employer-Appellant, v. MADGE STROSNIDER, Claimant-Appellee.

(*November* 28, 1945.)

RODNEY, J., sitting.

*William S. Prickett* for appellant.

*Herman Cohen* for appellee.

Superior Court for New Castle County, No. 56, September Term, 1945.

RODNEY, J., delivering the opinion of the Court:

Except for the establishment of certain fixed principles,

I shall not indulge in extended citation of authorities from other jurisdictions. Most of the authorities agree that cases involving industrial accidents are so peculiarly subject to the existence of particular facts that upon the existence or non-existence of those identical facts may depend the pertinency of the case, and general analogies are dangerous and misleading.

Most Workmen's Compensation statutes, like our own, *Rev. Code*, 1935, §6071 *et seq.* require that an accident, compensable under its provisions, be one "arising out of and in the course of the employment." Very respectable authority thinks it impossible to have a case arising "out of" employment which is not also "in the course" of the employment, although the converse is quite possible. *Horowitz on Workmen's Compensation*, p. 172.

All of the cases construing provisions similar to our own agree that the two terms "arising out of" and "in the course of" employment are not synonymous, but distinct, and both must be shown to exist in a given case. *Children's Bureau v. Nissen*, 3 *Terry* (42 *Del.*) 209, 29 *A.* 2d 603.

The requirement that an injury occur "in the course of his employment" relates to the time, place and circumstances of the accident. It covers those things that an employee may reasonably do or be expected to do within a time during which he is employed, and at a place where he may reasonably be during that time.

From the facts of the present case we find the claimant at her place of employment (the shipyard) at the time of the accident; she was at the precise place in the shipyard that she was supposed to be; the rest room was provided for her and she was there at the exact time required; she was returning to her place of individual employment by the usual direction of her employer and by the exact course of travel

she was supposed to take. If no other feature prevents recovery, there is little difficulty in finding the injury occurred "in the course of" her employment.

■ ■ Did the accident arise "out of" the employment? This term is generally held to refer to the origin of the accident and its cause, and relates to the character and quality of the accident with reference to the employment. Most of the authorities in general line with *Caswell's Case,* 305 *Mass.* 500, 26 *N. E.* 2d 328, hold that an injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment, or has a reasonable relation to it.

Substantially no case, today, in construing the Workmen's Compensation Act, liberally, but fairly, would consider that the injury must arise out of the main work which provides the employee's wages, and no such contention is here made. It is sufficient if the injury arises from a situation which is an incident or has a reasonable relation to the employment, and that there be some causal connection between the injury and the employment. So it is that some cases involving transportation to and from work where the nature of the employment covered the extra time or distance, cases involving the use of telephones, stairways or elevators in carrying out the employee's business, and accidents happening during rest or refreshment periods have all been held to be incidents of employment. If injury occurs while so employed, and no other reason prevents recovery, then such injuries have been held to arise "out of" the employment of the claimant. It is clear, however, that the mere fact of the happening of an injury is not intended to make such injury a compensable one. There clearly must be shown a causal relation between the injury and the employment, and that the injury arose out of the nature, conditions, obligations or incidents of the employment, or that

a connection exists between the employment and the injury, by which the employment was a substantially contributing but not necessarily the sole or proximate, cause of injury.

From the facts as hereinbefore stated the claimant was, at the time of the injury, in that place where she was supposed to be. Her rest period having ended she was returning to her work. She stopped and engaged a pusher of a hand cart to obtain for her at a later hour a cup of coffee. While her money was being changed she sat upon the hand cart, some three feet high and six feet long, which had a large object thereon being moved to another part of the p'ant. While seated on the hand cart it was put in motion, and she remained seated as the cart was going in the same direction and by precisely the same route which she must travel. After going some short distance the pusher of the hand cart quickened his speed in order to overcome a raise in the floor near the sill of a door. As a consequence of the increase of speed or of the raise at the sill, or both, the object being moved on the cart overturned and injured the claimant, and this appeal concerns an award for those injuries. The employer claims the injuries did not arise out of her employment. The claimant contends that her return to her particular job from a place set apart for her rest by the employer, and by the shortest and usual route, was a part of her employment, and that the injury was an incident or happening growing out of her performance of her duty. Did the fact of her being seated on the hand cart remove her from a compliance with what she was supposed to do? Clearly, if she had been walking alongside of the hand cart and in the direction in which it was going, and toward her usual p'ace of occupation, and when in that position the object had fallen from the hand cart causing the injury, then, surely the injury would have arisen out of her employment.

Violation of a rule of the employer may have defi-

nite relation to the question of whether an accident arises out of the employment, yet, leaving consideration of violation of rules to a later discussion herein, it is difficult to see why the mere act of the claimant in sitting on the cart should bar her recovery. No question is here involved of mere amusement, skylarking or horse play. No evidence shows such facts. No question of negligence of the claimant, contributory negligence or assumption of risk by her is to be considered, for it was to obviate such questions that the statute was adopted. The employer expressly disclaims any contention that the claimant was injured because of her reckless indifference to danger, or wilful intention to bring about her own injury.

█ The claimant was proceeding in the exact course of her duty from the place provided for her rest period to the place of her usual occupation. Regardless of whether or not she had any formed intention, by means of the hand cart, to reach her usual station, at an earlier time than by walking, yet such would clearly have been the probable ultimate result had not the accident intervened. With this accident she was the victim, but no more the causative force than if she had been a pedestrian alongside of the hand cart, and injured by the toppling over of the carried article.

Somewhat similar facts were present in *McWilliam v. Great North of Scotland Ry. Co.,* [1914] *W. C. & Ins. Rep.* 135, 8 *N. C. C. A.* 901n, cited in 10 *N. C. C. A.* 349, Note. There a railway porter proceeding to the place of his regular duty attempted to jump upon the running board of a baggage van moving in the same direction, and was injured. A rule of the company prohibited such act. The Court held that the accident arose out of the employment to the same extent as if he had run alongside of the train and slipped, and thereby been injured.

In *Fiarenzo v. Richards & Co.* 93 *Conn.* 581, 107 *A.* 563, 564, the injured person was going from one place to another on the premises of the employer, as he was required to do in line of his employment. Instead of walking, as others did, he attempted to jump upon a passing truck going in the same direction, and met his death. General orders not to ride upon trucks were proven, but no specific order at the time. The Court held that in passing from one point to another he was doing what his employment called for, not in the riding, but in the moving from place to place, and said "Had the deceased slipped and been injured while walking from one place of work to another on his employer's premises in the course of his work, it would hardly be claimed that the injury did not arise out of the employment. What difference did it make that he slipped while attempting to get on the truck for the same purpose."

See also *Pacific Employers Ins. Co. v. Kirkpatrick,* 111 *Colo.* 470, 143 *P.* 2d 267; *Archie v. Greene Bros. Lumber Co.,* (1943) 222 *N. C.* 477, 23 *S. E.* 2d 834; *Heyman Distributing Co. v. Industrial Commission,* (1941) 376 *Ill.* 90, 32 *N. E.* 2d 894; *Laudato v. Hunkin-Conkey Const. Co.,* 135 *Ohio St.* 127, 19 *N. E.* 2d 898.

But the employer contends that an express rule of the company prohibited the claimant from being upon or riding on the hand cart or truck, as happened in this case. It is in evidence that when the claimant entered the service of the company she was given a book of rules, and this custom seems to have been followed as to all employees. A receipt for the book was taken from each employee, and this receipt read in part "I have received the pamphlet entitled 'Rules for your safety' which I promise to read and follow implicitly while in the employ of this company."

The book itself is not before this Court on appeal but is described by the Board in its opinion as containing "55

pages of closely printed matter and over 400 detailed safety rules and regulations."

The claimant does not deny the receipt of the book, but stated she had never looked at it. The exact terms of the pertinent rule are not entirely clear from the record, but it would appear that Rule 10 is the one relied on, in somewhat these terms:

"Employees shall not ride truck, railroad or crane equipment."

Whether the rule was intended to include an instrumentality such as involved in this case, it is unnecessary to determine. In the record the words "truck," "cart" and "hand cart" are indiscriminately used as descriptive of the vehicle upon which the claimant sat at the time of the injury.

█ The mere fact that the employer has established general rules governing many situations growing out of employment, even when joined by a violation of such rules by an employee, does not, in itself, bar every recovery for injury. If so, an employer, by elaboration of the rules, might render the statute practically nugatory. Most authorities either follow the English pattern and divide rules of conduct prescribed by an employer and violations thereof in two general classes, or adopt the general principles of such classification. These divisions are rules for the limitation of the sphere of employment of an employee on the one hand, and, on the other, rules for the regulation of the conduct of an employee within the proper sphere of his employment.

█ Just as an employer is only liable for injuries arising out of or in the course of the employment, so such an employer may, by proper rules, clearly and unequivocally brought to the attention of the employee, so limit the scope or sphere of employment that a violation of such rules may put an employee beyond the range or scope of the employ-

ment, so that any resulting injury may not be said to have arisen out of or in the course of employment, and therefore not be compensable. On the other hand, if the rule be merely for the regulation of the employee within the scope or sphere of his proper employment, then the violation of such rule, in the absence of wilful misconduct or some other independent principle, does not remove the resultant injury from the compensable class. This is for the reason that the action of the employee, notwithstanding the violation of the rule, is still within the scope or sphere of the employment, and the injury is one arising "out of and in course of his employment." The violation of the rule may involve negligence on the part of the employee, contributory negligence, assumption of risk, or some other similar principle, but these are not to be considered in view of the nature and purpose of the Workmen's Compensation statute.

It is not always easy to precisely apply the foregoing classification of rules and their violation, especially where the injury occurred at a place or under circumstances disconnected with the actual work or employment for which wages were paid. In the present case the employment of the claimant at the time of the injury imposed upon the claimant the express duty to return from the rest room to the place of her usual occupation where her wages were earned. In the performance of this duty she may or may not have been negligent by her presence on the hand cart or truck, but such presence did not, I think, entirely remove her from her sphere of employment or put an end to her duty to return to her place of work. If it had such effect it would be difficult to fix the precise time when this change took place, viz., whether it was when the claimant originally sat upon the stationary truck, or remained on it when it became in motion.

The mere fact of sitting for a moment on a stationary

vehicle clearly would not have taken the claimant from her sphere of employment. The additional fact of remaining on the vehicle when it was put in motion, and going in the same direction which she was to take, added nothing as to her sphere of employment. The operator of the vehicle testified he had no reason to suspect there was any danger in the claimant being on the cart or truck. Even if the claimant had any reason to anticipate the danger, such thought would have relevancy as to negligence, but not as to sphere of employment.

Much reliance is placed by the employer upon lack of any formed reason or intention on the part of the claimant in getting on the truck or cart. In answer to a question as to the reason, she said "that I don't know. I couldn't tell you why. I just sat down. I had no personal reason." To me the intent in sitting down on the truck is not important. Even as applied to her remaining on the truck when it became in motion, for her mental reason, colorable, if desired, in testimony and impervious to effective cross examination, is not so important as the reason or intent as disclosed by the facts themselves. It seems to be entirely clear that the claimant was returning to her work, and that the truck or cart was going in the same direction. At no time was there a deviation from the route which should have been taken by the claimant.

Considerable space in the briefs and argument was given to the question as to whether the employer by "acquiescence" in the violation of the rule had practically abrogated it. Perhaps "acquiescence" is not precisely the proper word, in view of the facts of the case. The question really is as to whether reliance can be placed upon the rule, in the light of the alleged lack of notoriety or proper notice brought to the attention of those sought to be bound thereby, and in view of any state of disuse into which the rule may have fallen. It is clear that no signs or notices of any kind

were present near the cart or truck indicative of its danger. Sole reliance for knowledge of the rule on the part of employees was had by its being printed with some 400 other rules in a booklet of some 58 pages, which was presented to the worker at the time of employment, and a receipt taken therefor. Except for an initial lecture of one hour at the time of employment, which lecture covered general subjects of War Bonds and deductions from payroll, no other provision for safety instruction was had, regardless as to whether the employees were able to read the booklet or not.

The claimant had never read the booklet, and knew nothing of any rule concerning the hand cart or truck, and such also is the testimony of other witnesses. Several witnesses testified that they had, on several occasions, seen persons on the cart when it was both stationary and in motion. A supervisor of the company so testified. Indeed, the very person placed in charge of the hand cart or truck by the appellant corporation, called an "expediter," and who was operating the vehicle at the time of the injury, testified that even if he had gotten a booklet of rules he had never read it, and had never heard of a rule forbidding persons from getting on the hand cart. The Industrial Accident Board found the rule "for all practical purposes a dead letter paper rule and non-existent."

From a thorough review of the pertinent law and relevant facts, I am of the opinion that the award of the Industrial Board should be affirmed.

Costs are taxed against the appellant.