ERNEST M. GROVES, JR., Plaintiff, v. HUGH MARVEL, Defendant.

(*April* 15, 1965)

LYNCH, J. sitting.

*Robert C. O'Hora* and *W. Stanley Balick,* for plaintiff.

*Albert L. Simon* and *Daniel B. Perry,* for defendant.

Superior Court of Delaware for New Castle County, No. 500 Civil Action, 1963.

LYNCH, Justice.

Plaintiff, service manager of Automotive Importers, Inc., a retail dealer in automobiles, located in Wilmington, seeks to recover damages from defendant, an automobile salesman for the same company, for personal injuries, sustained by reason of the alleged negligence of defendant, a co-employee of plaintiff, while both were engaged in performance of their duties as employees of Automotive Importers, Inc. Plaintiff was paid benefits under the Workmen's Compensation for the injuries so sustained.

Plaintiff's duties as service manager were to diagnose trouble in automobiles and write up "work orders;" ordinarily they did not include "doing the mechanical work,"—this was done by the mechanics. At a hearing held before the Industrial Accident Board plaintiff described his duties.

"* * *, as service manager, I was to allocate work to your mechanics, keep up on your factory warranty work, and go over customer complaints, diagnose automobile trouble, road tests, I think that would cover it pretty fully."

He also stated that his duties included opening up and locking

the service department area, at the beginning and end of each working day, including Saturdays. At the same hearing, on direct examination, plaintiff gave the following answers:

"Q. Now, specifically with regard to diagnosing what might be wrong with an automobile, is there any hard and fast rule as to how far you would go in your examination in order to determine what is wrong with an automobile?

"A. No.

"Q. Would it be a true statement to say that you would do whatever would be necessary in your opinion in order to give as full an evaluation to some particular problem as possible?

"A. Without getting a mechanic, yes."

On Saturday, August 11, 1962, after usual closing time and while engaged in locking up for the day, plaintiff opened the door to his employer's service area so as to permit defendant to bring his wife's car into the service department. There was some work to be done by Automotive Importers, Inc. on the car. Defendant, however, also wanted to do some work on the car himself. After the car was in the service area, defendant asked plaintiff to take a look at the engine, because it "sounded funny." Plaintiff picked up the rear deck lid of Mrs. Marvel's automobile and made some minor adjustments to the engine of the car. Then he asked defendant to turn the ignition key on so as to start the motor. Defendant, who was standing outside the car, did what plaintiff requested, by reaching into the inside of the car from the outside and turning "on" the ignition switch. The automobile was standing in reverse gear and when the engine started the car lurched backwards and plaintiff, who was standing behind the car, was pinned to the wall of the building, causing his injuries.

Plaintiff filed a claim with the Delaware Industrial Accident Board for Workmen's Compensation benefits. At the hearing before that Board, defendant testified:

"Q. So far as you were concerned, Mr. Marvel, when Mr. Groves undertook to look into your motor and see what was wrong or do something about it, was he doing that as a service manager for Automotive Importers or as a friend of an acquaintance trying to be helpful to you?

"THE WITNESS: We will say—I think as a co-worker he was doing it for me, but he would do it for any transient who was coming through as a service customer obligation of his, of goodwill, and so forth."

Plaintiff's attorney contended at this hearing:

"* * * It has been testified to by the claimant and the man who worked directly with him, Mr. O'Neal, that the service that was performed by the claimant was ordinarily performed in the course of employment, and would have been performed for any other customer. The mere fact that this automobile belonged to a customer, I think we should remember that it did belong to a salesman's wife and did not belong to a salesman and the mere fact that the salesman had pulled it into the shop, and I do not believe should have any bearing on the activity that took place. It was testified to and without contradiction, in fact, it was corroborated by Mr. Hearne that it is the normal type of thing in customer relations in the course of looking at an automobile that apparently had difficulty that if it is something of an extremely minor nature like putting a wire on a sparkplug, it is done and there is no work-order written up. It is a matter of customer relations and it is something ordinarily done. It was done at a time that the shop was ordinarily still in use by the service manager and his assistant."

Counsel for Automotive Importers, Inc., on the other hand, argued:

"* * * This accident took place after the regular course of business occurred and as a matter of fact it took place because it was being done after the regular course of business, that is because there is not the regular shop force there. Mr. Groves got someone—not in the

service department, in effect, to assist him in the work; namely, what had been called the customer, of course, actually, and employee in another part of the business. This is the sort of thing which would not have occurred if Mr. Groves did his business during the regular course of business hours * * *."

The Board made an award to plaintiff, finding he received his injuries "arising out of and in the course of his employment" and ordered the employer to pay "the reasonable surgical, medical and hospital services, medicine and supplies" needed to effect a cure of such injuries, as well as statutory compensation.

Plaintiff Mr. Groves has now sued defendant Mr. Marvel here, contending (Paragraph 1 of the Complaint):

"On August 11, 1962, at about 12:15 P.M., at the place of business of Automotive Importers, Inc., on the duPont Parkway about one (1) mile South of the City of Wilmington, Delaware, the defendant turned on the ignition of his automobile at a time when said automobile was in reverse gear, said automobile being a Volkswagen, and at a time when the Plaintiff was standing in back of said automobile between said automobile and a garage door. As a result, Defendant's automobile ran into and against Plaintiff."

He seeks recovery of damages for the injuries he claims to have received and for which he was awarded compensation, together with the medical expenses.

Defendant asserted affirmative defenses, such as—

"6. The plaintiff and defendant were both employed by the same employer, Automotive Importers, Inc., and the fellow-servant rule in force in the State of Delaware bars a revovery in an action by the plaintiff against the defendant."

and

"7. The Plaintiff and Defendant were both employed by the same employer, Automotive Importers, Inc. On September 18, 1962, Plaintiff filed an application with the Industrial Accident Board of the State of Delaware for workmen's compensation benefits on the same facts constituting the basis of this suit. On January 2, 1963, the Plaintiff was awarded workmen's compensation benefits pursuant to his application and accepted such benefits from Liberty Mutual Insurance Company, the Workmen's Compensation carrier of the employer of both the Plaintiff and Defendant, as a result of which Plaintiff is barred from recovery in this action by virtue of 19 *Del. C.* 2304 and 19 *Del. C.* 2363."

Defendant has moved for summary judgment and has filed an affidavit, setting forth the substance of the foregoing factual statements. Plaintiff likewise filed an affidavit in which the same factual material appears, except that plaintiff stated that his work for Automotive Importers, Inc. was customarily performed in the service shop area, located in and to the rear of the sales showroom, while defendant's "customary place of work was in the sales showroom, located in front of the service shop."

Counsel for the parties have filed briefs and argued their respective positions. Defendant contends plaintiff's suit is barred by Title 19 *Del. C.* Sec. 2363(a) since defendant is a "Natural Person in the same employ" as that of plaintiff. Plaintiff, on the other hand, contends (1) a material fact is in issue and (2) that although defendant was a Natural Person within the meaning of the statute, he was not "in the same employ" as plaintiff, within the meaning of the statute.

After a careful and detailed examination of the respective affidavits filed by the parties and the transcript of the hearing before the Industrial Accident Board[1], I find no genuine issue of any material

---

Defendant's attorney proferred this at the argument and requested the court to take judicial notice of the proceedings before the Board. See *Barks v. Herzberg, Storey*, 206 A. 2d 507, 509 (Sup.Ct., 1965).

fact or facts and that only a legal question is presented for determination.

Prior to 1955, 19 *Del. C.* Sec. 2363(a) read as follows:

*Whenever an injury for which compensation is payable under this chapter is sustained under circumstances creating in some person other than the employer, a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this chapter or obtain damages from, or proceed at law against such other person to recover damages, but he shall not proceed against both.*"

In 1955, the above section was amended by 50 Del. Laws, Ch. 339, so that the cited section now provides:

"(a)    Where the injury for which compensation is payable under this chapter was caused under circumstances *creating a legal liability in some person other than a natural person in the same employ or the employer* to pay damages in respect thereof, the acceptance of compensation benefits or the taking of proceedings to enforce compensation payments shall not act as an election of remedies, but such injured employee or his dependents or their personal representative may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section. * * *" (Emphasis supplied throughout unless noted.)

Defendant contends he is immune from suit by virtue of the cited provision of the statute, and he argues that the plain meaning of the language used in the amendment necessarily means a co-employee can no longer be sued for injuries he may have inflicted on a fellow employee, where the injuries sustained have been compensated by benefits paid under the Workmen's Compensation Statute. He points to the language "* * * other than a natural person in the same employ * * *," appearing in the amendment, and contends such language immunizes both the employer and the co-employee from suit.

The Michigan Supreme Court has decided the precise issue which confronts this court in the instant case. In *Sergeant v. Kennedy,* 352 Mich. 494, 90 N. W. 2d 447 (1958), the plaintiff in that case was a passenger in a car owned and operated by the defendant, a co-employee, used while on the business of their employer. An intersection accident occurred in which the plaintiff was injured and upon which the cited suit was brought. The defendant in the cited case argued that a co-employee is immune from suit, because of the same language as it appeared in the Michigan Statute. In resolving the question in favor of the defendant in the case before it, the Michigan Supreme Court set out the pertinent provisions of Michigan's Workmen's Compensation Act both prior to and as it had been amended in 1952.

It is to be noted that prior to 1952, the pertinent section of the Michigan Statute was identical to Delaware's provision before the 1955 Amendment to the Delaware Statute. Michigan's 1952 Amendment and Delaware's 1955 Amendment are identical in language.

In commenting on the Amendment and the use of the words "other than a natural person in the same employ," the Michigan Court stated (90 N. W. 2d at page 450):

"We also wonder why the legislature would have needed to single out and mention those in the 'same employ' at all if it was going to leave things precisely as they were before? Since they were singled out and mentioned is it not more logical to assume that the legislature intended some significance to attach thereto and instead meant what it rather plainly if clumsily seemed to be saying by the quoted portion of the amendment: (a) That henceforth in these situations tort feasor co-employees can no longer be civilly sued, and (b) that, as between the employer and strangers, injured workers are no longer to be put to uncertain and sometimes possibly unjust fatal election of remedies. This interpretation not only appears to accord with logic, the historical background of this section, and the plain meaning of the language used in the amendment, but tends also to accord with the recent trend of

kindred legislation in a growing number of sister states on this subject, as indicated and discussed by Larson in the 1952 edition of his work on Workmen's Compensation Law at Sec. 72.20. * * *"

Later in *Pettaway v. McConaghy,* 367 Mich. 651, 116 N. W. 2d 789 (1963), the Supreme Court of Michigan was called upon to consider the same amendment and in construing the identical provision it had considered in *Sergeant v. Kennedy,* held that for the purpose of exemption from liability in this type of litigation *"all* natural persons" who are carrying on the activities of their employer, regardless of what those activities may be are to be given the same immunity as the employer. In the cited case the President of a corporation had converted a press from manual to automatic operation, in violation of a Michigan Statute, and without installation of a proper safety device. Defendant was also general manager of the plant in which plaintiff was injured while operating the converted press. Plaintiff was a press operator and he later had lost his hands in operating the converted press.

Therefore, it seems immaterial, as held in Pettaway, that the co-employee tortfeasor was the President of the corporation, sole owner of its stock and General Manager and the injured employee was only a machine operator. Under the law, as held by the Michigan Supreme Court, they are nonetheless to be regarded as co-employees and as such, each is immune from suit as to each other, since time may not be a material factor.

Accordingly, I hold it is immaterial in this case that the plaintiff is a service manager of a retail automobile establishment and the defendant is a salesman for such company, or that at the time of the accident, as it was argued, the employees may have been acting outside their regular duties. In such circumstance, the test is whether or not the employees were furthering the employer's interests. Larson, Workmen's Compensation Law, Sec. 27.00. It appears obvious in the case at bar that the defendant was furthering his employer's interest in that the repairs which the plaintiff was performing on the customer's

car at the time of the accident were for his employer's interest; if nothing else, his efforts may be said to have been creating good will and as such they were within the scope of his employment. Larson, Workmen's Compensation Law, Sec. 27.22(a).

Apparently, this is at least one factor the Board may have considered in granting the plaintiff a Workmen's Compensation award. It is beyond dispute that the defendant was furthering his employer's interest by bringing the customer's vehicle inside the garage for needed work on it; the defendant, by assisting the plaintiff in the repairs plaintiff was making, was also acting in furtherance of their employer's interests and, therefore, each was acting within the scope of employment. It seems to be universally accepted that an employee who assists a co-employee in the latter's performance of his work is within the course of employment. Larson, Workmen's Compansation Law, Sec. 27.11. It is moreover immaterial that the defendant may have also been furthering an interest of his own. *Argoe v. Marinaccio,* 63 N. J. Super. 438, 164 A.2d 809, 812 (1960); so long as the employee's acts arise in or are of the nature, conditions, obligations or incidents of or to his employment or have a reasonable relation to it, he is acting within the scope of his employment. *Dravo Corporation v. Strosnider,* 4 Terry 256, 45 A.2d 542 (Superior Ct. of Del., 1945).

*Plaintiff cites Helmic v. Paine,* 369 Mich. 114, 119 N. W. 2d 574 (1963)—a case decided later than *Sergeant v. Kennedy,* supra, and urges the court to accept the case as reflecting the present Michigan law. Referring to Sergeant, the Michigan Supreme Court said in *Helmic v. Paine,* 119 N. W. 2d at page 576:

"Appellee lays heavy stress upon the language in *Sergeant v. Kennedy,* 352 Mich. 494, 90 N. W. 2d 447. This case construed a portion of the statute quoted above. In Sergeant, suit was filed by an employee against a co-employee for injuries arising out of an automobile accident. In that case, plaintiff was a passenger in a car owned and driven by defendant, although, * * * at the time, both were pursuing their employer's interest. A motion for summary

judgment by defendant was denied, and this Court reversed. In the Sergeant case, the facts were clear. It was said there: 'We may add that no question is raised here but that the plaintiff and defendant and employer were clearly under the act and that the injuries which were sustained arose out of an accident occurring during the course of employment.' * * * The language of the decision in Sergeant must be read in view of its facts. Sergeant stands for the proposition, among other things, that an employee cannot maintain suit against a fellow employee where the injury arises out of an accident occurring during the course of employment.

"Another question is raised, however, when one employee injures a co-employee and the accident can be said not to have arisen during the course of employment. What then? Does the statute bar recovery in a separate tort action? Suppose one employe is engaged in his employer's business at some distance from his employer's premises; if he is injured by a co-employee who is on vacation, could it be seriously contested that a tort action could not be maintained? The legislature intended no such result. We conclude therefore that both employees must be in the course of their employment for the statutory bar to operate."

Thus it appears that the Michigan Court ruled that the *particular* "place"[2] where the industrial accident occurs is not wholly determinative in considering the liability of the co-employee; great importance is to be given to what the co-employees were doing when the industrial accident takes place. The Pettaway case, from the Michigan Court, supra, p. 466, brings out the element of time of the two acts of negligence need not be coincidental, since in the Pettaway case the president and general manager had caused the installation of the offending press, which *later* caused the plaintiff in that case to lose his hands when he operated it. As a matter of fact, even the *place* where the industrial accident takes place is not wholly determinative, as is brought out in *D'Agostino v. Wagenaar,* discussed *post.*

---

[2] Supra, p. 328

*At a later point in its opinion in Helmic v. Paine,* supra, the Michigan Court noted, 119 N. W. 2d at 577:

"* * * The statute has created a strong yet rebuttable presumption in the situation referred to above. *The conclusion is inescapable, if,* as appellee says, *the accident happened upon company premises the presumption is that appellee was in the course of employment.* The question of where the accident happened has not been decided. This will determine, assuming other statutory requisites are met, whether the presumption applies. *The ultimate fact must then be decided as to whether appellee was in the course of his employment."* (Emphasis supplied.)

The Michigan Court referred, 119 N. W. 2d on page 577, to a New York case, *D'Agostino v. Wagenaar,* 183 Misc. 184, 48 N. Y. S. 2d 410, which was determined under the New York Statute. So far as is pertinent, that statute reads:

"The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee, or in case of death his dependents, when such employee is injured or killed by the negligence or wrong of another in the same employ."

In the cited New York case, the plaintiff, a gardener, was an employee of a club. He was mowing grass on the club premises near the curb of a private driveway through the club premises when he was struck by defendant's car. The defendant was a night watchman of the club. He owned a private automobile, which was kept on the club property with permission of the club, but it was not used for any club purposes. His duties included patrolling the house on the premises, answering the telephone and taking messages and required him to work from about ten o'clock at night to about 7:30 in the morning.

The accident occurred about two o'clock in the afternoon, at which time the defendant was driving his automobile on the club driveway, intending to go some distance from the club to visit his sister. While driving along the driveway, defendant's car jumped the curb, ran

upon the grass where plaintiff was engaged with the lawnmower, and struck the lawnmower, pushing it against plaintiff's legs and feet, causing the injuries for which the suit was brought. After having been awarded Workmen's Compensation Law benefits he sued defendant, premising his suit on the language of the New York Law cited above.

In deciding the case, the Trial Court ruled, 48 N. Y. S. 2d 410, 412:

"In arriving at the meaning of the term 'in the same employ' as used in Section 29, one must consider the purpose and effect of the Workmen's Compensation Law as a whole. With this in mind, however, it is clear that the noun 'employ' as so used has merely its ordinary and usual meaning as synonymous with 'employment.' * * * The law as a whole covers injuries to employees arising out of and in the course of 'employment.' To make Section 29 applicable at all, plaintiff must have sustained an injury in the course of employment, and to be immune from suit, a co-employee causing the injuries must be 'in the same employ,' namely in the course of employment by the same employer.

"The question in this particular case is, Was the defendant 'in the same employ' as the plaintiff at the time of the accident? The answer to the question, of course, rests in the fixing of the time when the defendant on the day in question is to be considered as stepping out of the course of his employment by the club. I am of the opinion that in any event when the defendant entered his private automobile on the day in question to institute a personal journey, he ceased to be in the 'employ' of the common employer within the meaning of the statute. The keeping and use of his automobile on club premises was solely for his own convenience. It was a personal privilege extended to him and it was no part of his employment to use his automobile in leaving or reaching his place of work. The getting into his automobile and driving the same away on the personal journey, even while he was still on the Club property, was a personal act of his own choice, not associated with or having anything to do with his employment."

The Appellate Division affirmed this ruling, 268 App. Div. 912,

51 N. Y. S. 2d 756, without opinion, as did the New York Court of Appeals, 294 N. Y. 640, 58 N. E. 2d 522, also without opinion.

Other New York cases, such as *Lambiase v. Schechter,* 22 A. D. 2d 648, 253 N. Y. S. 2d 16 (A.D. 154 Dept. 1964); *Frick, Adm. v. Horton, Adm.,* 21 A. D. 2d 212, 250 N. Y. S. 2d 83 (App. Div. 3d Dept. 1964) and *Bradley v. Frazier and Board of Education,* 17 A. D. 2d 235, 233 N. Y. S. 2d 894 (App. Div. 3d Dept. 1962) show that the place where the accident occurs is of only passing importance; it is what the co-employees were doing at the time one was injured and if they were each acting within the course of their employment that is of significance, as was so clearly brought out in *D'Agostino v. Wagenaar; it is what each employee was doing in relation to the duties of his employment that is of importance.* See also *Pettaway v. McCongly,* supra.

As I read *Helmic v. Paine,* supra, and the above cited New York cases, they do not in the slightest degree cast any doubt whatsoever on the relevancy and persuasiveness of *Sergeant v. Kennedy* and *Pettaway v. McCongly.* Since these cases dealt with the same language I am called upon to construe in this case, I conclude that they are significant precedents and carry much weight, and I adopt their result and reasoning in determining this case.

█ Under any construction of the facts before me, under the law such as has been discussed, I rule that the defendant was furthering his employer's interests when he aided the plaintiff in plaintiff's efforts to make the needed adjustment of the customer's car, at the time the plaintiff was injured, as a consequence of defendant's act. Since plaintiff was a "natural person" and was acting in "the same employ" as defendant, I am constrained to hold that defendant came within the meaning of 19 *Del. C.* Sec. 2363(a), as the language of that statute was interpreted in the Michigan cases; as such, defendant is immune from suit and his motion for summary judgment is granted.

Order accordingly on notice.