**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

Benjamin A. Schwartz, Esq.
Anthony R. Arcaro, Esq.
Schwartz & Schwartz
1140 South State Street
Dover, DE 19901

Ronald W. Hartnett Jr., Esq.
Chrissinger & Baumberger
3 Mill Road, Suite 301
Wilmington, DE 19806

Stephen A. Hampton, Esq.
Grady & Hampton, LLC
6 North Bradford Street
Dover, DE 19904

RE:  *Henry R. Davenport v. D&L Construction & Solid Walls, LLC*,
 C.A. No. S14A-03-002 RFS

Date Submitted:  July 2, 2014
Date Decided:  October 27, 2014

Dear Counsel:

Before the Court is the appeal of Claimant Henry R. Davenport ("Claimant")

of a decision rendered against him and in favor of D&L Construction, LLC ("D&L")

and Solid Walls, LLC ("Solid Walls") by the Industrial Accident Board (the "Board")

regarding Claimant's separately filed Petitions to Determine Compensation Due. For

the reasons explained below, the Board's decision is **AFFIRMED**.

1

## Facts & Procedural Background

During the relevant time period, Claimant was employed by D&L. On the date of Claimant's injury, D&L was a sub-contractor to Solid Walls, a general contractor. Solid Walls maintains workers' compensation insurance, but did not receive a certificate of insurance from D&L regarding Claimant. At the time of Claimant's injury, D&L did not have workers' compensation insurance.

D&L is a construction company specializing in framing and carpentry. The company consisted of the members of the Miller family: David Miller ("Mr. Miller"), his three brothers, and his son. Mr. Miller hired Claimant to drive the D&L crew members to their various job sites, as their Amish faith prohibited them from owning or operating a motor vehicle. About a year before Claimant's accident, D&L's previous driver had quit, and Claimant was hired after he approached Mr. Miller about the job.

Throughout his employment with D&L, Claimant worked five days a week and, along with his co-workers, was paid on Fridays. Claimant was paid $60 per day for driving D&L's crew in Kent County, Delaware, and $70 per day for driving D&L's crew to Sussex County, Delaware. Claimant's pay rate was determined by D&L. D&L provided Claimant an Internal Revenue Service 1099 Form for his 2011

2

tax returns. Claimant considered himself to be an employee of D&L, rather than an independent contractor.

D&L provided the truck that Claimant used to transport the D&L crew members and their work materials. However, because of the Millers' religion, the truck was owned by D&L's former driver. Throughout his time with D&L, Claimant kept the truck at his residence. D&L paid for the its insurance, gas, and maintenance.

On days when D&L was to perform work, D&L would instruct Claimant the night before as to the job's location and the time Claimant was to pick up the crew members. In the morning, D&L would provide Claimant with directions to the location if Claimant was unaware of how to find it. D&L would also instruct Claimant as to when to pick the crew up at the end of the workday. Sometimes in the morning, Claimant helped load the truck when he picked up the crew.

Once at the job, on at least one occasion, Claimant would help unload the truck or its trailer. Also, he would help reload the trailer and clean the site of trash and lumber at the end of the work day. On one instance, he was asked to pick up trash because "[t]he sooner we get this cleaned up, the sooner we can go home."[1] However, according to Claimant, he was not being paid for this task and so he stopped performing it.

---

[1] Tr. of Henry Davenport at 41:18–19.

According to Claimant, he needed D&L's permission to leave a job site during the workday, and if he left, he would be told what time to return.[2] Sometimes, he was instructed not to leave the site. On one occasion, he was told that the crew would not be there too long because of rain. On another, he was told to stay put because trusses were being delivered, but if they were not delivered on time, the crew would leave. Sometimes, he was told to not go anywhere because Mr. Miller wanted Claimant to take him to run errands. One time at a job site, Claimant was asked to go pick up materials. On another occasion, he was asked to leave the site and go pick up lumber. When he returned with the lumber, the crew was busy. Therefore, Claimant asked if he could unload lumber, which he did. Sporadically, Claimant was asked to leave a job site to go pick up another person. According to Claimant, he would be sent out on errands for D&L "[e]very now and then."[3]

On one occasion, Claimant helped the D&L crew with trusses. According to Claimant, he saw a D&L crew member in need of assistance with the trusses. Therefore, he went over and helped. Mr. Miller testified, however, that after he

_____

[2] In his testimony, Mr. Miller denied that Claimant needed permission to leave the job after he arrived and unloaded the D&L crew and the truck's trailer. Mr. Miller also affirmed that when D&L's job was in Kent County, Claimant was free to leave if he wanted. If the job was in Sussex County, he was allowed to leave "[s]ome days." Tr. of David Miller at 85:18.

According to Claimant, if the D&L job was in Sussex County and if he left it, he had to stay within a five-to-ten-mile radius.

[3] Tr. of Henry Davenport at 36:7.

4

observed what Claimant was doing, Mr. Miller stopped Claimant and told him not to provide assistance because Claimant was not a member of D&L and Claimant's assistance could be problematic.[4]

Because Claimant generally was not required to stay on the job site, he would sometimes run his own personal errands, sleep in the truck, or do his own handy-man work for his own customers. Throughout his time with D&L, Claimant was a licensed general contractor with his own "little contracting business."[5] However, he did not drive for anyone other than D&L. He also would not use the D&L truck for purposes unrelated to D&L's business without D&L's permission. Sometimes, when Claimant would leave the job site, he would run errands for D&L on his way back.

Occasionally, members of the D&L crew would ask Claimant to fix things, which he would do. Also, according to Claimant, he helped put up walls "several times."[6] One time, on the ride home from a job site, Claimant was told to get a haircut, which he did.

According to Mr. Miller, Claimant was not expected to or asked to be involved in framing work. Mr. Miller also stated that Claimant wanted to help the D&L crew

---

[4] According to Mr. Miller, Claimant was not happy with this. *See* Tr. of David Miller at 86.

[5] Tr. of Henry Davenport at 45:20.

[6] *Id.* at 40:20.

members, but Mr. Miller told him that he could not because he was not a member of D&L. Mr. Miller told Claimant he would be paid by check, although, according to Mr. Miller, Claimant wanted to be paid "[u]nder the table."[7]

On the day of Claimant's injury, May 10, 2012, D&L was providing the framework on an individual house in Blades, Sussex County. Solid Walls was the general contractor. As the D&L crew worked, Claimant sat in a windowsill. He then noticed that a D&L worker needed assistance moving a piece of framed wall into place. Claimant got up and walked toward the framed wall to hold it for the D&L worker. As he walked over, Claimant fell through plywood which had been cut in the floor, sustaining injury.

Prior to a hearing on Claimant's Petitions, D&L requested a legal hearing before the Board to determine if Claimant was an employee or an independent contractor. The Board rendered a decision, finding that Claimant was an independent contractor, and thus ineligible to receive workers' compensation benefits. Claimant appealed to this Court, which reversed and remanded the Board's decision on the grounds that the Board, at the legal hearing, improperly placed the burden of proof

---

[7] Tr. of David Miller at 85:7.

on Claimant, as the non-moving party, to prove that he was an employee and not an independent contractor.[8] D&L subsequently withdrew its request.

On February 24, 2014, the Board issued its written decisions on Claimant's Petitions to Determine Compensation Due, denying Claimant's Petitions as to both D&L and Solid Walls. First, the Board found that Claimant was an independent contractor hired to provide the limited service of driving at the time of his injury. After laying out the law as to whether a person could be characterized as an employee or an independent contractor, the Board first looked at the element of control. It noted that Claimant was told when to pick up D&L workers at the beginning of the day, where to take them, and when to pick them up at the end of the day. Further, the Millers were Amish, and thus could not exercise control over Claimant's driving. The control element also related to the questions of whether Claimant's occupation was of the type that would normally require direction from the employer, and whether the occupation required specialized skill. While the act of driving itself only required a basic level of skill, the Millers did not possess that skill allowing them to oversee Claimant's performance of his job. Moreover, the evidence showed that Claimant

---

[8] *See Henry Davenport v. D&L Construction, et al.*, C.A. No. S12A-10-002 (Del. Super. Mar. 25, 2013) (Bradley, J.).

7

controlled his activities when not driving D&L crew members. Claimant was free to sleep, go shopping, or do his own work for his own customers.

The Board also considered the distinctiveness of Claimant's occupation with whether his work was part of the employer's normal business and whether employer was indeed in business. D&L certainly was a business. Its business, however, was framing and carpentry, not driving. Further, although Claimant was himself a general contractor, he was a driver for D&L, an occupation entirely distinct from framing and carpentry or general contracting.

Additionally, the Board noted that D&L provided the instrumentalities of Claimant's work. D&L supplied the truck, as well as its gas, insurance, and maintenance. While this fact generally tends to support finding a claimant an employee, the Board stated that the truck was kept at Claimant's home, and was even available for his personal and professional use apart from his work with D&L. Moreover, the Millers were prohibited from owning or using the truck.

The Board also examined the length of Claimant's employment, noting that Claimant was hired on an open-ended basis to drive the D&L crew members to their job sites, a task he performed on the date of his injury. The Board stated that Claimant was hired to serve mostly, if not exclusively, as a driver. The Board noted that Claimant himself appreciated this fact, as Claimant could not understand how

8

Mr. Miller's request that Claimant get a haircut related to his driving. The Board also noted that Claimant ceased picking up scrap materials because he was not being paid for such a task, and that Mr. Miller had told him not to assist in installing the trusses. Although Mr. Miller once paid him $20 for fixing a fan belt on the truck, the Board stated that Claimant was neither compensated nor had reasonable expectation of compensation for services other than driving. Moreover, the evidence showed that after performing his driving duties, Claimant was free to do as he pleased.

As to Claimant's pay, the Board stated that he was paid per day when he drove, the rate of which would change depending on the county in which D&L's job was located. This, the Board noted, resembled a pay-per-job arrangement, which supported finding Claimant to be an independent contractor.

The Board also examined whether the parties believed they were creating a master-servant relationship. Claimant insisted that he always believed himself to be D&L's employee. However, the Board noted that D&L never withheld taxes from Claimant's pay. Further, D&L gave him a 1099 form at the end of the year 2011, and at that time, well before his accident in May 2012, Claimant never raised the issue of the ambiguity of his relationship with D&L.

The Board then held that, even if Claimant was an employee, Claimant's injury was not compensable because his injury did not arise out of and was not sustained

within the course and scope of his employment. His injury was not within the course and scope of his employment because, although there was no dispute that Claimant was at the D&L job site when he was injured, he was only a driver. He had been told by Mr. Miller on a prior occasion not to provide assistance with the construction work. He was also off-duty when he was injured, as the D&L crew was still working at that time. No one asked Claimant to sit in the windowsill while the crew worked, and no one asked Claimant to provide assistance with the framed wall. Claimant admitted that his compensation related entirely to his driving duties, and thus his pay would not have been affected had he offered assistance with the wall. Claimant was only present at the job site on the date of his injury for the fortuitous reason that he was unfamiliar with the area.

His injury also did not arise out of his employment because he was not acting within the scope of his employment, as a driver, when he was injured. The Board also ruled that the "coming and going" rule, and its premises exception, in that an injury is ordinarily not compensable if it occurs as an employee is coming in or leaving from work, with the exception of an injury occurring on the employer's premises, did not apply. When Claimant was injured, he was not going to work. Rather, he was voluntarily sitting in the windowsill when he chose to get up and provide assistance without being requested to do so. The workday had not yet ended for the D&L crew.

10

Further, nothing but Claimant's own desire required him to be present at the job site. This voluntary act, the Board ruled, did not constitute acting within the course and scope of his employment, or even align with Claimant's own allegations as to the nature of his employment with D&L. The Board ruled that Claimant was a driver who was neither paid nor had any reasonable expectations of being paid for any other type of work by D&L.

## Standard of Review

When reviewing appeals from the Board, this Court examines only the record upon which the Board relied in making its decision.[9] The sole questions for the Court are whether substantial evidence supported the Board's decision and whether the Board's decision lacked legal error.[10] "Substantial evidence has been defined to mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence is more than a scintilla but less than a preponderance."[11]

---

[9] *Burgos v. Perdue Farms, Inc.*, 2011 WL 1487076, at *2 (Del. Super. Apr. 19, 2011).

[10] *Id.*

[11] *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (citations omitted) (internal quotation marks and ellipsis omitted).

11

The requisite degree of evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Evaluating the evidence, deciding credibility issues, and determining factual questions are not within the Court's purview.[13] The Court reviews questions of law *de novo*.[14] "Absent errors of law, the standard of review of an IAB decision is abuse of discretion."[15]

## Analysis

Claimant contends that the Board's decisions that he was an independent contractor, rather than an employee, and that his injury did not arise out of and within the course and scope of his employment when he was injured were not supported by substantial evidence.

Concerning Claimant's first point, Claimant argues that, while being terminable at will, D&L maintained a significant degree of control over his driving duties and his non-driving activities throughout the workday, both on and off the job site. At D&L's discretion, Claimant was on-call to do whatever D&L asked of him. If Claimant used the truck for activities unrelated to D&L, he would do so with D&L's

---

[12] *Burgos*, 2011 WL 1487076, at *2.

[13] *Id.*

[14] *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998) (citation omitted).

[15] *Opportunity Ctr., Inc. v. Jamison*, 2007 WL 3262211, at *2 (Del. May 24, 2007) (citation omitted).

permission. He also states that the Millers' inability to own or operate a car for religious reasons is irrelevant to this issue. D&L, who provided the truck, its gas, insurance, and maintenance, had the *right* to control Claimant's performance of his driving duties. Further, although driving crew members and materials, as well as unloading those materials, were not the primary purposes of D&L's business, they were essential. Additionally, not only did Claimant perform the essential task of transporting crew members and materials, he also occasionally helped unload materials off of the truck.

Claimant also states that the length of time of his employment and the method of payment indicates that he was D&L's employee. Although he was paid per job, he worked five days a week, using the truck for work-related activities, and was paid on Fridays, just like the D&L crew members. Also, he believed himself to be an employee; and his 1099 form, is not dispositive to his status as an employee.

Concerning his second point, Claimant argues that his injury was within the course and scope of his employment. The Board placed much emphasis on the fact that Claimant was hired only to be D&L's driver. However, on a number of occasions, he was instructed to render non-driving assistance to workers on the job, as well as perform non-driving tasks both on and off the job site. One time, Claimant lent D&L crew members his own jack and guided them in its use. Indeed, over time,

13

Claimant's duties expanded. Further, throughout his tenure with D&L, Claimant maintained his own general contractor's license. Therefore, he argues, D&L had the collateral benefit of having a driver who could perform many jobs as needed. Given this arrangement, Claimant argues that it was entirely reasonable for him to be present at the job site in Blades on the date of his injury. It was also reasonable for him to provide assistance to a D&L crew member, as he had done on many prior occasions.

Claimant also argues that his injury arose out of his employment because he was waiting at a site, was not permitted to go home, and was helping a member of the crew. On prior occasions, he was told not to leave a job site after dropping the crew off. The implication is thus that a condition of his employment was that he was at D&L's beck and call. Waiting, and in particular waiting at job sites, was part of his job. Claimant's injury occurred at approximately 3:00 p.m., roughly a half hour to forty-five minutes before the D&L crew was ready to leave. He was not off-duty and waiting on the windowsill on his own volition. Instead, he was waiting for the work day to end so he could transport the crew members back home. Also, Claimant contends that the premises exception to the going and coming rule applies because Claimant, at 3:00 p.m., was leaving work, and the injury occurred on the employer's premises.

D&L and Solid Walls argue that the Board's decision is supported by substantial evidence and free from legal error.

Under the workers' compensation chapter of the Delaware Code, "'employee' means every person in service of any corporation (private, public, municipal or quasi-public), association, firm or person . . . under any contract of hire, express or implied, oral or written, or performing services for a valuable consideration."[16] The Code also defines the term "independent contractor."[17]

"[O]nly employees, not independent contractors, are eligible to receive workers' compensation for work-related injuries. The burden of proof in a workers' compensation case is upon the moving party. Generally the quantum of proof for elements in a workers' compensation case is a preponderance of the evidence."[18] A case's individual facts and circumstances determine a worker's status, "and the factor which has been given predominant consideration is the right to control. An employer

---

[16] 19 *Del. C.* § 2301(10).

[17] 19 *Del. C.* § 2311(a)(2) ("For purposes of this section, 'independent contractor' shall mean any person not excluded from mandatory coverage under provisions of this chapter, who performs work or provides services for a contractor, subcontractor or other 'contracting entity' in return for remuneration and/or other valuable considerations but who is not an employee of the contractor[,] subcontractor or other 'contracting entity' or any other person or entity with respect to the work performed or the services provided.").

[18] *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1097 (Del. 2006) (citations omitted).

15

may not avoid liability for worker's compensation simply by classifying his employee as an independent contractor."[19]

In reaching the conclusion as to whether a worker is an employee or an independent contractor, the Delaware Supreme Court has pointed to non-exclusive factors listed in Section 220 of the Restatement (Second) of Aagency:

> (a) the extent of control, which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;
>
> (g) the method of payment, whether by the time or by the job;
>
> (h) whether or not the work is a part of the regular business of the employer;
>
> (i) whether or not the parties believe they are creating the relation of master and servant; and

---

[19] *Id.* (citations omitted).

(j) whether the principal is or is not in business.[20]

In this case, Claimant's status cannot be easily determined. "Where the nature of the [employment] relationship does not clearly fit in either category, . . . the issue is one of fact."[21] On the one hand, Claimant was hired "for an undefined period" as opposed "to complet[ing] a finite number of tasks before leaving for another position with someone else."[22] It can also be said that D&L "exercised substantial control over the details of [Claimant's] work," at least insofar as his driving duties.[23] Further, D&L "provided the substantial instrumentalities, tools, and place of work."[24] Although D&L, as a sub-contractor, did not control the job sites, it still provided those sites to Claimant.

---

[20] *Id.* at 1100 (citing, *inter alia*, Restatement (Second) of Agency § 220(2)(a–g) (1958)). *See also Rocha v. Keka Const., Inc.*, 2005 WL 791362, at *4 (Del. Super. Mar. 31, 2005) ("Delaware Courts have defined an independent contractor as one who is engaged to do work in an independent manner, accountable only as to the results obtained, and is not subject to the control or supervision of the employer." (citation omitted) (internal quotation marks omitted)).

In *Falconi*, the Delaware Supreme Court noted another four-part test used in making this determination. However, the Court instructed the use of the Restatement factors "when the issue is whether a claimant is an employee or independent contractor of a single business." *Falconi*, 902 A.2d at 1100.

[21] *Valentine v. Walford*, 1984 WL 553521, at *1 (Del. Super. Nov. 5, 1984).

[22] *Falconi*, 902 A.2d at 1100 (citation omitted).

[23] *Id.* at 1101 (citation omitted).

[24] *Id.* (citation omitted).

17

On the other hand, Claimant maintained and utilized his own general contracting license throughout his tenure with D&L.[25] In the incident involving Claimant helping to clean up a job site, while he did not actually submit an invoice for payment, he stopped performing the task because he was not going to be paid.[26] D&L also did not hold Claimant "out to the public as a person who, to all appearances, was an employee."[27] Although Mr. Miller asked Claimant to get a haircut, assumedly because Mr. Miller did not like Claimant's appearance, Mr. Miller specifically told Claimant, on one occasion, that he was not a member of D&L. Also, Claimant was paid per job, rather than on a time basis. If Claimant did not drive, he was not paid.[28]

Claimant believed that he was D&L's employee. However, "it is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the

---

[25] *See id.* at 1100–01 ("Falconi did not hold himself out as the owner of a distinct business." (citation omitted)).

[26] *See id.* at 1101 ("Falconi never submitted an invoice seeking payment for services rendered and had no written contract.").

[27] *Id.*

[28] *Falconi*, 902 A.2d at 1101 ("Falconi received a fixed payment of $80/day, $400/week on a time basis rather than based on how many cars he fixed or how much work he accomplished. Even accepting that Falconi enjoyed the flexibility not to come to work, he was paid on a *per diem* basis rather than for his productivity or the results of his work." (citation omitted)).

18

one and *submission* to control by the other."[29] There was no submission on Claimant's part. Claimant did not "agree[] to obey [D&L's] general rules."[30] In the incident involving the trusses, Claimant was specifically told by Mr. Miller not to provide assistance. According to Mr. Miller, "from the very first day [Claimant] liked to work and like normal people do they like to work. He wanted to help me and I told him he can't because he's not a member."[31] Therefore, it was clear to Claimant that he should not provide assistance to D&L members on a job site. Yet, he injured himself by doing just that, without any request or permission for that assistance. Thus, Claimant was not submissive to D&L's rules.

The Board thoroughly analyzed each of the Restatement factors listed above and decided that Claimant was an independent contractor. This Court cannot rule that the Board's determination was not supported by substantial evidence. Although this case might be considered a close-call, the record contains a sufficient degree of evidence to warrant a finding that Claimant was an independent contractor.

Further, the Court agrees with the Board that even if Claimant could be considered D&L's employee, he was not acting within the course and scope of his

---

[29] *Id.* at 1102 (emphasis added) (quoting Restatement (Second) of Agency § 220 cmt. M *Belief as to existence of relation*) (internal brackets omitted).

[30] *Id.* at 1101.

[31] Tr. of David Miller at 86:21–23.

employment when he was injured. "Injury" for purposes of the workers' compensation is defined as "violence to the physical structure of the body . . . arising out of and in the course of employment."[32] "The phrases 'arising out of employment' and 'in the course of employment' are not synonymous. They are distinct and [the employee] must satisfy each of them in order to get workers' compensation benefits."[33]

The phrase "arising out of employment" "is generally held to refer to the origin of the accident and its cause, and relates to the character and quality of the accident with reference to the employment."[34] Further, "[m]ost . . . authorities . . . hold that an injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment, or has a reasonable relation to it."[35] However, the injury need not arise from the employee's main work.[36] "It is sufficient

---

[32] 19 *Del. C.* § 2301(15). *See also* 19 *Del. C.* § 2304 ("Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.").

[33] *Delhaize America, Inc. v. Barkas*, 2007 WL 2429375, at *3 (Del. Super. Aug. 22, 2007) (citations omitted).

[34] *Dravo Corp. v. Strosnider*, 45 A.2d 542, 544 (Del. Super. 1945).

[35] *Id.* (citation omitted).

[36] *Id.*

if the injury arises from a situation which is an incident or has a reasonable relation to the employment, and that there be some causal connection between the injury and the employment."[37] There need not be, however, an "essential causal relationship" between the injury and the work.[38] "Therefore, an employee does not have to be injured during a job-related activity to be eligible for workers' compensation benefits."[39]

The phrase "in the course of employment" "relates to the time, place and circumstances of the accident. It covers those things that an employee may reasonably do or be expected [to do] within a time during which he is employed, and at a place where he may reasonably be during that time."[40] "The general rule is that an employee's hours of employment include a reasonable amount of time before and after an employee's work hours."[41]

The Board possessed a firm basis in holding that Claimant was not injured within the course and scope of his employment. Claimant had been specifically told

---

[37] *Id.*

[38] *Delhaize*, 2007 WL 2429375, at *3 (citing and quoting *Tickles v. PNC Bank*, 703 A.2d 633, 637 (Del. 1997).

[39] *Delhaize*, 2007 WL 2429375, at *3 (citing *Tickles*, 703 A.2d at 637).

[40] *Dravo*, 45 A.2d 543–44.

[41] *Delhaize*, 2007 WL 2429375, at *3 (citation omitted).

in the past not to help D&L crew members because he was not a member of D&L. Therefore, it was not reasonable, and certainly not expected, for Claimant to provide unsolicited assistance that led to his injury.[42]

Based on the foregoing, the Board's decision is **AFFIRMED**.

**IT IS SO ORDERED**.

Very truly yours,

*/s/ Richard F. Stokes*

Richard F. Stokes

Cc: Prothonotary
    Judicial Case Manager

---

[42] The Court does not consider the "coming and going rule," as well as its premises exception, relevant to this case. Claimant was injured at approximately 3:00 p.m. The D&L crew was not set to leave until 3:30 p.m. or 3:45 p.m. Therefore, Claimant was neither coming nor going to work because there was still a period of time for the D&L crew to work before Claimant drove them home. Even if waiting was part of Claimant's job, he would have been already working at 3:00 p.m., rather than coming or going to work.