# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Employer-Below/Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N23A-10-003 KMV |
| | ) | |
| TIMOTHY WILLIS, | ) | |
| | ) | |
| Claimant-Below/Appellee. | ) | |

Submitted: July 24, 2024
Decided: December 6, 2024

## **MEMORANDUM OPINION**

*Upon Appeal from the Decision of the Industrial Accident Board*:
**REVERSED**

Brandon R. Herling, WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP, New Castle, DE; *Counsel for Employer-Below/Appellant*.

Donald E. Marston, James R. Donovan, DOROSHOW, PASQUALE, KRAWITZ & BHAYA, Newark, DE; *Counsel for Claimant-Below/Appellee*.

**VAVALA, J.**

1

This is an employer's appeal from an Industrial Accident Board decision awarding workers' compensation to an employee truck driver for injuries he suffered after crashing a company truck into a guardrail. The employer argues the employee should not be compensated due to his voluntary intoxication at the time of the crash. Whether the employee was, in fact, intoxicated and, in turn, whether his intoxication proximately caused the crash are pivotal issues here.

This Court finds the Board erred as a matter of law and abused its discretion by awarding compensation to the employee. The Board erred as a matter of law by concluding the employee was within the course and scope of his employment at the time of the crash. The Board abused its discretion by excluding admissible, potentially probative evidence on a material issue and making factual findings based on speculation, rather than substantial evidence in the record regarding the employee's intoxication and the cause of the crash. Finally, the Board's decision allowed an intoxicated employee to recover compensation, which is inconsistent with public policy prohibiting drunk driving.

Accordingly, the Board's decision is **REVERSED**.

# I.  FACTS AND PROCEDURAL BACKGROUND[1]

In the early morning hours of June 8, 2021, a semi-trailer truck, driven by Claimant-Below/Appellee Timothy Willis, collided with a guardrail near the intersection of York and Thornton Mill Roads in Baltimore County, Maryland.[2]

## A.  The Truck Driver

The night before, Willis, a truck driver for Employer-Below/Appellant United Parcel Service ("UPS"), started his shift at the Christiana hub in Newark, Delaware.[3] He made several deliveries before driving to Willow Grove, Pennsylvania.[4] Following Willow Grove, Willis's next and last assignment was to drop off the trailer portion of the truck in Hunt Valley, Maryland (around a two-hour drive) and then drive back to the Christiana hub.[5]

Willis typically packs a cooler of beers to celebrate the end of his shift while driving back home; but on the day of the crash, he started early. Although there was some dispute about the number of beers, Willis admitted he drank three beers while

---

[1] The facts in this decision reflect the Industrial Accident Board's findings based on the record developed at the April 4, 2023, hearing ("Hearing"). *See* Docket Item ("D.I.") 1 at Ex. A ("Decision"); *id.* at Ex. B ("Reargument Decision"). Citations to the Hearing transcript (D.I. 15 at App. A) are in the form "Tr. #." The lodged depositions are cited as Last Name Dep.

[2] Tr. 123:16–17.

[3] Tr. 64:17–65:5, 97: 13–17; Decision at 3, 11. Willis was a truck driver for 38 years and worked for UPS for 10 years. *Id.*

[4] Decision at 11.

[5] *Id.*

driving to Hunt Valley.[6]  After dropping off the trailer, Willis then started driving back to the Christiana hub to drop off the cab portion of the truck, before beginning his trek home to New Jersey.[7]

Around 3:56 a.m., Willis was traveling southbound on York Road in Maryland at about thirty miles per hour, weaving through one of its many tight curves, when he barreled into a guardrail.[8]  Willis testified before the Board he lost consciousness and did not recall hitting the guardrail, nor the events following the crash.[9]  But the first responders—Officers Eric Scott and Mordechai Singer of the Baltimore County Police Department—had no difficulty remembering the scene.

As the officers approached the disabled truck, they observed Willis throwing multiple beer cans out of the truck window into the surrounding wooded area.[10]  The officers instructed him to stop, but he persisted.[11]  When the officers approached the cab, they found Willis wedged between the driver's seat and the passenger seat.[12]  Officers observed Willis was slurring his speech and sweating profusely.[13]  Willis

---

[6] Tr. 113:23–114:4; Decision at 16.

[7] Tr. 63: 12–14, 88:11–12; Decision at 11.

[8] Decision at 3, 12, 19.

[9] *Id.* at 12.

[10] *Id.* at 4, 17.

[11] *Id.* at 17.

[12] *Id.*

[13] Decision at 17, 19; Tr. 124:17–22 (Willis was "leaning over from the driver's side of the vehicle to the passenger side of the vehicle reaching for something. He kind of had himself

4

was not unconscious, but told the officers he did not know what had happened and then stated his doctor was screening him for diabetes.[14]  As Willis got out of his truck, the officers smelled an odor of alcohol coming from Willis's breath and body, and he had apparently defecated on himself.[15] As a precaution, officers called for medical aid.[16]

The officers spotted an open Miller Lite can on the running board of the truck, still partially full of beer and cool to the touch.[17]  Two additional Miller Lite cans were found on the ground on the other side of the guardrail, and a full can of beer was in a cooler inside the truck.[18]

Officer Singer stated in the police report the road conditions had no defects, the surface was dry, the weather was clear, it was dark, but lights were on. [19] and There were no driving distractions noted other than Willis driving under the influence of alcohol.[20]

---

falling between the seats, wedged. [Officer Scott a]sked him if he needed help, he said no. But he seemed like he was having trouble getting out from that area.").

[14] Decision at 17.

[15] *Id.*

[16] *Id.* at 17, 19. Willis refused medical help and did not go to the hospital. *Id.* at 17.

[17] *Id.* at 18.

[18] *Id.*

[19] Decision at 19.

[20] *Id.*

After the medics released Willis, Officer Scott requested he perform standard field sobriety tests, but Willis refused.[21] Although neither officer saw Willis actively drinking at the scene, and Officer Scott later agreed that "someone with a concussion could present with D.U.I.-type symptoms,"[22] based upon the totality of the investigation, the officers arrested Willis for Driving Under the Influence of Alcohol ("DUI").[23] Willis later pled "not guilty, agreed to statement of facts" in a Maryland court and was sentenced to probation before judgment on the charge.[24]

In the days and weeks that followed, Willis reported to treating health care providers that, just prior to the crash, he spotted deer on the left shoulder of the roadway.[25] He flashed his lights to usher the purported mob away from the road, but at least one deer dashed in front of his truck instead.[26] Wrenching the steering wheel to avoid roadkill, he collided with the guardrail.[27] The Board commented on issues

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.* at 2.

[25] Decision at 12, 19. Willis was familiar with the road, but hadn't driven on it for more than a year. *Id.* at 12. Willis did not mention any deer to the police officers at the scene. Tr. 140:19–21 ("When I asked Mr. Willis what happened, he said he didn't know. He blacked out. He had no idea what happened. So he did not mention anything about deer.").

[26] *Id.* at 12.

[27] *Id.*

6

with Willis's credibility, specifically his statements about whether deer—and how many deer—were present just prior to the accident.[28]

### B.    The Compensation Claim and Defenses

On August 2, 2021, Willis petitioned to determine compensation due.[29] UPS denied compensability because Willis was not acting within the course and scope of his employment at the time of the accident and had forfeited his rights to benefits due to his voluntary intoxication and reckless indifference to danger.[30] The Board addressed Willis's claims and these defenses at the Hearing held April 4, 2023.[31]

### C.    The Hearing

At the Hearing, Willis gave live testimony, as well as Dr. James Zaslavsky's by deposition.[32] Health and Safety Manager John Saulino and Officers Scott and Singer offered live testimony on behalf of UPS, along with Dr. Scott Rushton's by deposition.[33]

---

[28] *Id.* at 31.

[29] Decision at 2; D.I. 14 at 2.

[30] D.I. 14 at 2.

[31] *Id.* at 3.

[32] Tr. at 3:8–4:3.

[33] Tr. at 3:8–4:3. Saulino is the Regional Health and Safety Manager of the Chesapeake District for UPS. Tr. 164:20–23. At the time of the Hearing, he had worked at UPS for 27 years. Tr. 164:24–165:1.

Saulino testified the semi-trailer truck Willis was driving took great skill and concentration to operate; so much so, that swerving would inevitably cause the driver to lose control.[34] He also verified Willis was on the correct route for his job at the time of the accident.[35] Saulino stated that UPS has a "zero-tolerance policy[,] so being intoxicated is not the measure for determining a violation—just consumption of any amount of alcohol would be a violation."[36]

Bodycam footage from the crash scene was entered into evidence.[37] The Board excluded, over UPS's objection, the results of a BAC breathalyzer test performed on Willis after the accident as well as any testimony regarding same because the tests were not properly authenticated.[38] The Board also excluded, over UPS's objection, prior statements made by Willis during his probation before judgment hearing in Maryland.[39]

### D. The Decision

The Board granted in part Willis's compensation claims, reasoning that "the accident occurred at a time and place where [Willis] was reasonably expected to be

---

[34] Decision at 20.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 29. The Board reviewed 91 minutes and 20 seconds worth of videos. *Id.*

[38] *Id.* at 16.

[39] Tr. 171:12–18.

under the circumstances."[40]  The Board concluded that "the mere violation of an employer's safety policy does not necessarily place the occurrence of what would otherwise be a work accident outside the course and scope of employment."[41]The Board reached this conclusion relying on guidance from *Larson's Workers' Compensation Law*, which distinguishes between a violation of "the boundaries defining the *ultimate work* to be done" (where the violation would place the employee outside the scope of employment) from "a violation of regulation or prohibitions relating to the *method* of accomplishing that ultimate work" (where the violation remains within the course of employment).[42]  The Board rejected the defense that Willis's accident was outside the course and scope of his employment, finding UPS "failed to differentiate why its . . . Drug Alcohol Policy defined the 'ultimate work' to be performed as opposed to merely regulating how the work is to be performed".[43]

---

[40] Decision at 25.

[41] *Id.*

[42] *Id.* at 26 (citing 3 Arthur Larson et al., *Larson's Workers' Compensation Law* ("*Larson*"), at 33-1 ("When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to the *methods* of accomplishing that ultimate work, the act remains within the course of employment. Violations of express prohibitions relating to incidental activities, such as seeking personal comfort, as distinguished from activities contributing directly to the accomplishment of the main job, are an interruption of the course of employment.")).

[43] Decision at 25–26.

The Board found UPS "failed to meet its burden of proof that [Willis] was in fact intoxicated or that [Willis's] intoxication was the proximate cause of the accident."[44] In rendering its decision, the Board appears to have concluded UPS failed to prove intoxication because Willis was not convicted of DUI[45] while disregarding other evidence in the record reflecting Willis's admission that he had been drinking beer, Willis throwing beer cans outside of the cab after the accident, Willis's odor of alcohol, physical instability, and defecating on himself, then-existing road conditions, Willis's refusal to complete DUI field tests, and Willis's DUI-related court disposition.

Instead, the Board supposed: (1) "the alcohol in question [was] a light beer having a lower alcohol content than [other alcohols;]" (2) it [was] unclear when and over what duration Willis consumed the beer; (3) it was possible that the beers were cold because Willis drank and then placed empty cans back into the cooler; (4) there was no authenticated evidence about Willis's blood alcohol level or the effect three beers would have on his functionality; and (5) Willis did not appear to be intoxicated from the officers' bodycam footage (as viewed and interpreted by the Board, partially without sound).[46] The Board acknowledged Willis had credibility issues

---

[44] *Id.* at 27–28.

[45] *Id.* at 28.

[46] *Id.* at 29–30.

with his versions of events regarding the presence of deer..[47] Yet the Board found that, given the complexity of the truck Willis was driving, along with the *potential* for deer to be in the area, it was likely that Willis's swerving to avoid the deer was the cause in fact of the accident as opposed to Willis's intoxication.[48]

Separately, the Board also found UPS failed to meet its burden in proving Willis's intoxication rose to the level of being "a deliberate and reckless indifference to danger to invoke a forfeiture defense."[49] Instead, the Board found Willis's drinking and driving was a violation of UPS's policy, but did not amount to the "I-don't-care attitude" required in *Short v. Drewes*,[50] and "one could not reasonably argue that the presence of the unopened can [of beer] had any causal connection to the accident."[51] UPS timely appealed.[52]

## II. THE PARTIES' CONTENTIONS ON APPEAL

UPS contends the Board (1) erred as a matter of law by failing to conclude Willis was convicted of a DUI according to Delaware law; (2) abused its discretion by excluding the result of a breathalyzer test; (3) abused its discretion by excluding

---

[47] *Id.* at 31.

[48] Decision at 31–32.

[49] *Id.* at 33.

[50] *Id.* (citing *Short v. Drewes*, 2006 WL 1743442, at * 1 (Del. Super. Jun. 21, 2006)).

[51] *Id.*

[52] D.I. 1.

cross-examination of Willis on his statements during the entry of his probation before judgment plea in a Maryland court; (4) erred as a matter of law by concluding Willis was within the course and scope of his employment; (5) abused its discretion by concluding Willis did not forfeit his benefits; (6) the Board's factual findings do not entitle claimant to a period of total disability; and (7) the Board's fee award exceeds the amount awardable by law. Willis disputes each of these contentions.

## III. STANDARD OF REVIEW

The Superior Court exercises "appellate jurisdiction over final agency decisions under 29 *Del. C.* § 10142."[53] This Court's "review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[54]

This Court reviews the Board's legal conclusions *de novo* for errors in formulating or applying legal precepts.[55] The construction of a state statute is a legal

---

[53] *Quality Assured Inc. v. David*, 2022 WL 17442738 (Del. Super. Dec. 6, 2022).

[54] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (citing *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)); *see also Gen. Motors Corp. v. Freeman*, 164 A.2d 686, 689 (Del. 1960); *Rosenblum v. City of Wilm.*, 2024 WL 3876630, at *1 (Del. Super. Aug. 20, 2024); *Johnson v. Canalfront Builders, LLC*, 2024 WL 862442, at *3 (Del. Super. Feb. 29, 2024), *aff'd*, 2024 WL 3886193 (Del. Aug. 21, 2024).

[55] *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022) (citing *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994)) (internal quotation marks omitted).

12

issue. [56] "If there is no error of law and substantial evidence supports the Board's findings, the Board's decision must be affirmed."[57] Conversely,"[i]f the Board overrides or misapplies the law," this Court "will not hesitate to reverse."[58]

"Absent error of law, the standard of review for a Board's decision is abuse of discretion."[59] An abuse of discretion occurs when the Board's decision has "exceeded the bounds of reason in view of the circumstances, [or] so ignored recognized rules of law or practice as to produce injustice."[60] The Board's practice relating to the admission of evidence is generally less formal than courts of law. Section 1331.14.3 of the IAB Regulations guides such procedures:

---

[56] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 932 (Del. 2007) (citing *Page v. Hercules*, 637 A.2d 29, 32 (Del. 1994)) (construing worker's compensation statute).

[57] *Zayas*, 723 A.3d at 785 (quoting *Stevens v. State*, 802 A.2d 939, 944 (Del. Super. 2002) (internal citations omitted) (citing *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988)).

[58] *Baxter v. Verizon Commn's*, 2024 WL 3581660, at *3 (Del. Super. July 30, 2024) (first citing *Pitts v. White*, 109 A.2d 786, 788 (Del. 1954); then citing *Ohrt v. Kentmere Home*, 1996 WL 527213, at *3 (Del. Super. Aug. 9, 1996); and then citing *City of Wilm. V. Clark*, 1991 WL 53441, at *3 (Del. Super. Mar. 20, 1991)).

[59] *Person-Gaines v. Pepco Hldgs., Inc.*, 981 A.2d 1159, 1160 (Del. 2009) (citing *Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. Mar. 24, 2008)).

[60] *Zayas*, 273 A.3d at 786 (quoting *Roos Foods*, 152 A.3d 114, 118 (Del. 2016)) (alteration in original); *see e.g.*, *Abrahams v. Chrysler Grp., LLC.*, 44 A.3d 921, 2012 WL 1744270 (Del. May 11, 2012) (TABLE). In *Abrahams*, the Court ruled that the "IAB improperly permitted Chrysler's attorney to offer what amounted to expert testimony during her closing argument. This maneuver, defended before this Court as a tactical decision, violated fundamental notions of fairness by depriving Abrahams of the opportunity to dispute the facts material to the outcome of his case." *Id.* As a result, the Court determined that this case represented an abuse of discretion. *Id.*

13

> The rules of evidence applicable to the Superior Court of the State of Delaware shall be followed insofar as practicable; however, that evidence will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent persons in the conduct of their affairs. *The Board may, in its discretion, disregard any customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of its discretion.*[61]

Despite this flexible authority and even if "the Board's ultimate conclusion was based, in part, on credibility findings of other witnesses, [if] the process was so flawed that it is difficult for [this Court] to have confidence in the outcome[,]" this Court may reverse.[62]

The Board's fact finding is reviewed under the substantial evidence standard. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[63] Put differently, substantial evidence is "more than a scintilla but less than a preponderance of the evidence."[64]

---

[61] *Id.* at 785 (quoting 19 *Del. Admin. C.* § 1331-14.3) (emphasis in original); *see id.* at 785 n.55 (citing *Carey v. Bryan & Rollins*, 105 A.2d 201, 203–05 (Del. Super. 1954)) (discussing the *Carey* court's holding "that, where a question regarding claimant's intoxication during the time of the accident was material, it was an error for [IAB] to permit the claimant to refuse to answer the question").

[62] *Zayas*, 273 A.3d at 780.

[63] *Fowler v. Perdue, Inc.*, 2024 WL 3196775, at *8 (Del. June 24, 2024) (citing *Zayas v. State*, 273 A.3d 776, 785 (Del. 2022)) (cleaned up).

[64] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Noel-Liszkiewicz v. La-Z-Boy*, 68 A.3d 188, 191 (Del. 2013)); *id.* at 871 ("[T]his factual finding depends in large measure on the Board's assessment of the credibility of the witnesses who testify before it. It is the exclusive function of the Board to evaluate the credibility of witnesses." (citing *Hardy v. E. Quality Vending*, 2015 WL 2378903, at *6 (Del. Super. May 12, 2015))).

Importantly, this Court "must give deference to the 'experience and specialized competence of the Board' and must take into account the purposes of the Worker's Compensation Act. These restrictions are in part due to the 'critical advantage' the Board has in its ability to observe the testimony of the live witnesses."[65] In this context, it is not this Court's province to independently weigh the evidence, determine questions of credibility, or make its own factual findings,[66] but rather, to "view the record in the light most favorable to the prevailing party below."[67] Further, "[t]here is a presumption in favor of validity of the Board's decision and the burden of showing the error rests with the party raising the objection to such decision."[68] Here that is UPS.

## IV.  DISCUSSION

Mindful of its deferential standard of review and its obligation to view the record in the light most favorable to the prevailing party below, this Court must still conclude the Board misapplied the law and that its fact findings and conclusions

---

[65] *Foraker v. Amazon.com, Inc.*, 2022 WL 599047, at *3 (Del. Super. Feb. 9, 2022) (first quoting *Phoenix Steel Corp. v. Garton*, 1980 WL 687396, at *2 (Del. Super. July 25, 1980); then citing *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993); and then quoting *Butler v. Speakman Co.*, 1992 WL 276449, at *2 (Del. 1992)).

[66] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995)).

[67] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258–59 (Del. 2013) (citing *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del. 2010) (TABLE)).

[68] *Foraker*, 2022 WL 599047, at *3 n.40 (citing *Phoenix Steel Corp. v. Garton*, 1980 WL 687396, at *2 (Del. Super. July 25, 1980)).

exceed the bounds of reason in view of the circumstances. The record evinces substantial evidence supporting the conclusions that Willis was not acting within the scope and course of his employment and forfeited his compensation benefits.

## A. The Board correctly concluded Willis was not convicted of DUI.

UPS's first claim on appeal is that the Board erred as a matter of law because it concluded Willis was not convicted of DUI. UPS is wrong.

The record reflects Willis entered a "probation before judgment" plea in the state of Maryland under Criminal Procedure Article § 6-220 of the Maryland Code.[69] Under Maryland law, a DUI defendant who successfully completes the conditions of probation, "shall be [discharged] *without judgment of conviction* and [the discharge] is not a conviction for the purpose of any disqualification or disability imposed by law because of conviction of a crime."[70] The result is the same under Delaware law.

Delaware's analog for DUI "probation before judgment" is the first offenders program under 21 *Del. C.* §4177B:

> (a)(2) If a person applies and qualifies for the first offenders election under this section, all of the following apply: a. The court *without entering a judgment of guilt* and with the consent of the accused, may defer further proceedings and shall place the accused on probation upon terms and conditions, including enrollment in a course of instruction or program of rehabilitation. . . .

---

[69] Md. Code § 6-220.

[70] *Id.* § 6-220(g)(3) (emphasis added).

16

(c)(1) If a person fulfills the terms and conditions of probation *and conditions of probation, including satisfactory completion of the course of instruction or program of rehabilitation, and payment of all fees, the court shall . . . a. Discharge the person and the proceedings against the person.*[71]

A criminal conviction in Delaware does not become final until the time of sentencing.[72] It follows that because Willis was not sentenced, there was no DUI conviction under either Maryland or Delaware law.

UPS's reliance upon *Davis v. State* is misplaced.[73] That case addressed predicates for enhanced sentencing under Delaware's DUI statute, 21 *Del. C.* § 4177. Here, whether Willis had a prior conviction for purposes of enhancing a criminal sentence is not at issue. Because *Davis* is inapposite, this Court declines to address this issue further. The Board correctly determined Willis was not convicted of DUI.

**B.    The Board correctly excluded the breathalyzer results and Dr. Rushton's testimony concerning same.**

The second issue on appeal is whether the Board abused its discretion by excluding evidence of Willis's breathalyzer test results and Dr. Rushton's testimony regarding the results. The Board did not so err.

---

[71] 21 *Del. C.* §4177B (emphasis added).

[72] *State v. Waters*, 2019 WL 2486753, at *2 (Del. Super. Ct. June 13, 2019), *aff'd*, 242 A.3d 778 (Del. 2020); *Jackson v. State*, 654 A.2d 829, 831-832 (Del. 1995) (explaining that the sentencing order is the "order appealed from" in our statutory scheme). *See also* 10 *Del. C.* § 147; 10 *Del. C.* § 9904.

[73] 2014 WL 1312742 (Del. Super. Feb. 28, 2014); *aff'd*, 2014 WL 5089333 (Del. Oct. 8, 2014) (TABLE).

Under its liberal evidentiary standards, "[t]he Board may admit any evidence that it believes has probative value [and a]n 'abuse of discretion' only occurs when the Board exceeds 'the bounds of reason in view of the circumstances and has ignored recognized rules of law or practice so as to produce injustice.'"[74]

At the Hearing, UPS sought to introduce into evidence United States Department of Transportation ("USDOT") Alcohol Testing breathalyzer results that were signed by Willis.[75] The Board excluded both the breathalyzer results and Dr. Rushton's testimony concerning the results, based on UPS's failure to present a witness to properly authenticate the evidence.[76] UPS argues the Board abused its discretion by excluding the breathalyzer results and Dr. Ruston's testimony, relying on *Finocchiaro v. D.P., Inc* for the rule that breathalyzer results "*shall* be admissible and relevant[.]"[77]

In *Finocchiaro,* this Court affirmed the Board's admission of an employee's Blood Alcohol Concentration ("BAC") test results offered by an employer.[78] There,

---

[74] *Rosenblum v. City of Wilm.*, 2024 WL 3876630, at *2 (Del. Super. Aug. 30, 2024) (first citing IAB Rule 16(B); then citing *Finocchiaro v. D.P., Inc.*, 2006 WL 3873257, at *4 (Del. Super. Dec. 29, 2006); and then quoting *McDowell v. State*, 1991 WL 35679, at *2 (Del. Super. Mar. 14, 1991)).

[75] Tr. 34:24–35:4; 104:19–105:7, 181:13–20. *Contra* Tr. 106:2–5 (Willis denying taking a BAC test at Concentra Health).

[76] Tr. 105:6–24; 183:17–20.

[77] D.I. 14 at 17 (emphasis in original).

[78] 2006 WL 3873257, at *2 (Del. Super. Dec. 29, 2006).

18

the employee had argued the test was inadmissible because the employer did not produce live testimony establishing every link in the chain of custody. The Court disagreed and found "that chain of control need not be proven . . . because chain of custody becomes relevant only when a matter is *prosecuted* under chapter 41, title 21 of the Delaware code."[79] The Court further opined that, "in any proceeding in which an issue is whether a person is driving under the influence, evidence establishing the presence and concentration of alcohol or drugs in the person's blood, breath or urine shall be relevant and admissible."[80] And, the Court stated "in any proceeding, the resulting drug or alcohol concentration reported in a test . . . shall be deemed to be the actual alcohol or drug concentration, without any regard to margin of error."[81] Here, UPS contends that *Finocchiaro* dictates that all intoxilyzer breath tests "*shall* be admissible and relevant."[82] That reading is overbroad.

In *Finocchiaro*, the Court refused to exclude a BAC blood test based on the lack of a live witness to establish chain of custody where there was other evidence regarding the overall reliability of the test.[83] The purpose was to eliminate

---

[79] *Id.* at *3 (citing 21 *Del. C.* § 4177(h)) (emphasis in original).

[80] *Id.* (quoting the Board's decision).

[81] *Id.* (citing 21 *Del. C.* § 4177(g)) (omissions in original).

[82] D.I. 14 at 17 (emphasis in original).

[83] *See Milligan v. State*, 116 A.3d 1232, 1239 (Del. 2015) (citing *Demby v. State*, 913 A.2d 1127, 1131 (Del. 2005) ("We have never interpreted [Delaware's chain of custody law] as requiring the State to produce evidence as to every link in the chain of custody. Rather, the State must simply demonstrate an orderly process from which the trier of fact can conclude

19

redundancy of calling tangential witnesses and offering cumulative evidence, nothing more.[84] While *Finocchiaro* recognizes the relevancy and admissibility of BAC tests in the absence of a full chain of custody, it does not require admissibility of tests, particularly breathalyzer tests, in the absence of indicia establishing their reliability. The Delaware Rules of Evidence, requiring proper authentication, still apply. The admissibility of test results still centers "on [a party's] providing an adequate evidentiary foundation for the test result's admission."[85] In other words, UPS still needed to lay the proper foundation for the BAC test results to be admitted into evidence.

---

that it is improbable that the original item has been tampered with or exchanged. . . . [A]ny inconsistency in the authenticity testimony presented by the State . . . affected the weight and not the admissibility of the evidence presented.") (internal quotation marks removed); *Chavis v. State*, 227 A.3d 1079, 1094 (Del. 2020) (admitting evidence where considerable live testimony on the chain of custody within the police department and forensics lab was presented). *See also Cedeno v. State*, 2023 WL 6323598, at *2–4 (Del. Super. Sept. 27, 2023) (explaining the chain of custody process for intoxilyzers).

[84] *Hairston v. State*, 249 A.3d 375, 383 (Del. 2021) (citing *Demby*, 913 A.2d at 1132 (the limit on those deemed to be in the chain of custody "eliminate[s] the logistical and financial burden that the State would have if it were required to produce at trial every person who handled the evidence, irrespective of how tangential the contact might have been) (alteration in original)).

[85] *Clawson v. State*, 867 A.2d 187, 191 (Del. 2005) (first citing *McConnell v. State*, 369 A.2d 74 (Del. 1994) (TABLE); and then citing *Best v. State*, 328 A.2d 141 (Del. 1974)); *see also Miller v. State*, 4 A.3d 371, 374 (Del. 2010) (explaining that BAC tests may only be admitted after the proponent lays a proper foundation).

At his deposition, Dr. Rushton testified that the toxicology results reflect alcohol technician Deashti Raybele (and Willis) signed the tests.[86] But that is not enough. Although the alcohol technician was not required to appear at the Hearing (because Raybele's signature, on its face, showed that the breathalyzer tests were administered), *no* witness with knowledge was available to testify that the alcohol technician followed standard procedures in administering the BAC tests.[87] If admitted, the documents would have shown that UPS conducted BAC tests on Willis at Concentra Health several hours after the accident, and he registered BACs of 0.19 and 0.181—both readings more than twice the legal limit in the state of Delaware.[88] And Dr. Rushton's deposition included relevant information material to the subject at issue. True, the breathalyzer results were highly probative and signed by the

---

[86] Rushton Dep. 44:13–48:16.

[87] *See* 21 *Del. C.* § 4177 (if a toxicology technician who performed the BAC test signs the report, they need not appear in court because the report, on its face, shows that: "the blood delivered was properly tested under the procedures approved by the Division of Forensic Science, or the Delaware State Police Criminal Laboratory;" "those procedures are legally reliable;" "the blood was delivered by the officer or persons stated in the report;" and "the blood contained the alcohol, drugs or both therein stated"). *Cf. Hofmann v. State*, 299 A.3d 1282 (Del. 2023) (TABLE) (admitting BAC test results where the officer provided direct testimony that the phlebotomist followed standard procedures); *State v. Scott*, 2019 WL 1130370, at *2–3 (Del. Super. Feb. 8, 2019) (first citing *State v. McDowell*, 2000 WL 33114375, at *1 (Del. Super. Dec. 11, 2000); and then quoting *State v. Milligan*, 116 A.3d 1232, 1237 (Del. 2015) (explaining that "the phlebotomist is not a required chain of custody witness for the introduction of blood results in a DUI trial, and is not needed to 'show the authenticity of the sample, or the accuracy of the testing device'"); *Guilfoil v. State*, 135 A.3d 78 (Del. 2016) (TABLE) (admitting BAC test results without live testimony from one of the transporters of same).

[88] *See* 21 *Del. C.* § 4177(a)(4).

21

performing toxicology technician (*and* Willis). But the BAC test results could not be authenticated by Dr. Rushton's testimony alone; thus, UPS failed to establish an adequate evidentiary foundation for the BAC test results. Consequently, this Court cannot conclude the Board abused its discretion by excluding the test results and Dr. Rushton's testimony.

**C.  The Board abused its discretion by refusing to allow cross-examination of Willis on his prior statements during the Maryland proceeding.**

The third issue raised on appeal is whether the Board abused its discretion in refusing to permit cross examination of Willis with an audio recording of Willis's prior statements at the Maryland proceeding. Although the Board, as an adjudicatory body, enjoys broad discretion in managing its proceedings, the Board abused its discretion by excluding admissible, potentially probative cross-examination on a material issue.

At the Hearing, UPS's counsel explained to the Board that the recorded statements were from Willis, his defense counsel, the prosecutor, and the judge, and he had asked the Maryland court for a transcript, but was told that none could be provided.[89] Willis objected, arguing the statements were inadmissible hearsay because the declarants could not be cross-examined.[90] The Board admonished

---

[89] Tr. 21:23–22:14, 25:8–15.

[90] Tr. 21:9–22.

counsel for not presenting it with an agreed statement of facts for the Hearing and ultimately rejected hearing any audio recordings.[91]

In *Carey v. Bryan & Rollins*, the Board awarded compensation to the claimant for injuries sustained when a vehicle he was driving ran off the road and struck a telephone pole. This Court found the Board erred by permitting the claimant—who had testified on direct about details of the accident—to refuse to answer on cross-examination questions about consuming alcohol on the evening in question. On appeal, the Court found that questions about the claimant's intoxication were "proper cross-examination" and the employee "should have been compelled to give his answer."[92] "It is generally recognized that a witness must answer a question, even though to do so will disgrace him, where his testimony on the point is material to the

---

[91] Tr. 19:15–17, 20:8–23, 23:6–27:7, 29:24–30:1; *See also* Decision at 3 n.2 ("[UPS] wanted to submit into evidence an audio of the entirety of the [Maryland] court proceeding to enable the Board to understand the content of the statement of facts to which [Willis] agreed. [Willis] objected. The Board sustained [Willis's] objection to the extent of admitting the audio into evidence but overruled the objection with respect to presenting a stipulated summary of the content of the Agreed Statement of Facts. Such document was not prepared prior to the hearing in the event the Board would rule as it did. While the Board is not always inclined to do so, the Board scheduled a break in the hearing for the sole purpose of enabling the parties ([Willis], [Willis's] attorney, and [UPS]'s attorney) to listen to the audio and to prepare such stipulation to be admitted into evidence. The stipulation was handwritten in bullet point format and signed by both attorneys."). This Court recognizes the Board spent substantial time watching bodycam footage of Willis's arrest after the Hearing; but prohibiting Willis's prior statements from the Maryland proceeding and Dr. Rushton's deposition testimony as to the breathalyzer results cut off UPS's legs.

[92] *Carey v. Bryan and Rollins*, 105 A.2d 201, 203 (Del. Super. 1954).

23

issue."[93]  The *Carey* court held the Board erred in excluding the testimony and directed the Board to further explore the claimant's actions at the time of the accident.  *Carey* establishes, in determining awards for workers' compensation, questions about a claimant's alcohol consumption at the time of the accident are within the proper scope of cross.[94]  Like the claimant in *Carey*, Willis's alcohol consumption and whether his intoxication caused the crash, were material issues here.  The Board's preclusion of cross-examination on the statements Willis made to a Maryland Court bearing on these issues was an abuse of discretion.

The Board's denying UPS the opportunity to cross-examine Willis using an audio recording based on a hearsay objection was also an abuse of discretion.  While statements by other participants in the Maryland proceeding may have been hearsay, under Delaware Rule of Evidence 801(d)(2)(A), an opposing party's statements are not.[95]  This matter was tried before a Board, not a jury; thus, the Board could have limited itself to considering only portions of the recording relating to Willis's

---

[93] *Id.* (citation omitted); *see also* 81 Am. Jur. 2d *Witnesses* § 74, Westlaw (database updated Oct. 2024) (explaining that a "witness may be compelled to answer a question even though to do so will disgrace or degrade him or her where the witness's testimony on that point is material to the issue or issues being tried (citations omitted)).

[94] *Carey*, 105 A.2d at 203.

[95] *See also Plaches v. State*, 278 A.3d 661, 672 n. 73 (Del. 2022) (citing D.R.E. 801(d)(2)(A)) ("A statement that meets the following conditions is not hearsay: . . . (2) *An Opposing Party's Statement*. The Statement is offered against an opposing party and: (A) was made by the party in an individual capacity or representative capacity.") (emphasis and omissions in original).

statements. Nor was the probative value of such cross-examination substantially outweighed by a danger of unfair prejudice.[96] Although this Court agrees Willis was not convicted of DUI (because he was not sentenced), Willis engaged in a plea colloquy in a Maryland court involving an alcohol-related driving offense that also forms the heart of his compensation claim. Thus, any statements made by Willis on his physical state, his level of intoxication,[97] his culpability for the crash, and the cause of the crash were highly probative on material issues here and subject to testing through the adversarial process. This is particularly true where important factual determinations, like the presence of deer, hinged on Willis's credibility about the cause of the accident. While it would have been more efficient for UPS to have a transcript of the audio prepared, UPS should have been able to cross-examine Willis on any statements he made to the Maryland court using the audio recording. This Court finds it was an abuse of discretion for the Board to deny cross-examination on statements by a party opponent on highly probative, material issues. The Board's refusal to allow UPS to cross-examine Willis was an abuse of discretion.

---

[96] D.R.E. 403.

[97] *See Carey*, 105 A.2d at 201 (where claimant had testified about details of accident the question as to whether claimant, during course of evening in question, had anything to drink with alcohol in it, was proper cross-examination and of extreme importance in view of fact that a claimant whose injuries result from intoxication is not entitled to compensation benefits, and Board erred in permitting claimant to refuse to answer such question).

**D.** **The Board erred as a matter of law in finding Willis was acting within the course and scope of his employment.**

"Under the Delaware Workers' Compensation Act, an employee is entitled to receive compensation for injuries sustained in accidents 'arising out of and in the course of employment.'"[98] "Generally, the quantum of proof in a workers' compensation case is a preponderance of the evidence."[99] "When an employee has suffered an injury *causally related* to a work accident, he or she is entitled to payment of expenses incurred for 'reasonable and necessary' medical services directly related to that injury."[100] Typically, compensation is awarded when an employee travels for work.[101] Likewise, "[t]he employee is deemed to be within the course of his employment for a reasonable period while he winds up his affairs and leaves the premises."[102] Such activities are deemed within the course and scope of his employment *unless there is a distinct departure from work duties*.[103]

---

[98] *Quality Assured*, 2022 WL 17442738, at *3 (citing 19 *Del. C.* § 2304).

[99] *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1097 (citing *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 343 (Del. 1993)).

[100] 2022 WL 17442738, at *3 (citing 19 *Del. C.* § 2322) (emphasis added).

[101] 2 *Larson* § 13.01[4][a] ("One category in which compensation is almost always awarded is that in which the employee travels along or across a public road between two portions of the employer's premises, whether going and coming, or pursing active duties.").

[102] *Stewart v. Rodenberg & Son Floor Coating Contr.*, 1981 WL 377355, at *4 (Del. Super. Mar. 27, 1981) (citations omitted).

[103] 2 *Larson* at 25-1 ("An employee whose work entails travel away from the employer's premises is generally considered to be within the course of his or her employment

Conversely, no compensation is awarded when an employee's actions deviate from the ordinary course of business or a specific defense statute exists.[104] Voluntary intoxication while working deviates from the ordinary course of employment.[105] While one fact alone may not be sufficient proof of voluntary intoxication (e.g., a few drinks, smelling of liquor, possessing a half-empty bottle of whiskey, or repute

continuously during the trip, except when there is a distinct departure on a personal errand.").

Under 19 *Del. C.* § 2304, "every employer and employee . . . shall be bound . . . respectively to pay and to accept compensation for personal injury . . . *arising out of and in the course of employment*, regardless of the question of negligence and to the exclusion of all other rights and remedies." The term "arising out of employment" is "generally held to refer to the origin of the accident and its cause, and relates to the character and quality of the accident with reference to the employment." *See Dravo Corp. v. Strosnider*, 45 A.2d 542, 544 (Del. Super. 1945). Particularly, "an injury arises out of employment if it arises out of the nature, conditions, obligations or incidents of the employment, or has a reasonable relation to it." *Id.* "The requirement that an injury occur 'in the course of his employment' relates to the time, place, and circumstances around the accident." *Id.* at 543. Further, "it covers those things that an employee may reasonably do or be expected to do within a time during which he is employed, and at a place where he may reasonably be during that time." *Id.* at 544.

[104] 3 *Larson* at 32-1 ("Misconduct of an employee, whether negligent or wilful, is immaterial in compensation law, unless it takes the form of deviation from the course of employment, or unless it is of a kind specifically made a defense in the jurisdictions containing such a defense in their statutes.").

[105] *Id.* at 36-1 ("Voluntary intoxication which renders an employee incapable of performing work is a departure from the course of employment.").

of being a heavy drinker),[106] "a combination of [facts], particularly supported by evidence of the conduct of an intoxicated person, may establish intoxication."[107]

*Dravo Corp. v. Strosnider* established that violations of an employer's policy, alone, do not necessarily amount to an employee being removed from the course and scope of his employment. *Dravo* teaches "if the rule [is] merely for regulation of the employee within the scope or sphere of his proper employment, then the violation of such rule, *in the absence of wilful misconduct or some other independent principle*, does not remove the resultant injury from the compensable case."[108] Applying these principles, the Court found employee's injury compensable because she was "where she was supposed to be" at the time of the accident.[109] There, the employee was returning to work after her rest period and sat on a hand cart, which was traveling in the same direction and on the same route as the claimant needed to

---

[106] *See id.* § 36.01[1] ("[P]roof of intoxication does not follow from evidence of any single one of the following: that the claimant had had a few drinks, nor that there was a smell of liquor on the claimant's breath, nor that the claimant was in possession of a half-empty bottle of whiskey, nor that the claimant enjoyed a general reputation as a heavy drinker. *But a combination of some of these, particularly if supported by evidence of the conduct of an intoxicated person, may establish intoxication.*") (emphasis added).

[107] *Id.* § 36.01[1] ("For example, in *Lee v. Maryman*, there was evidence that a truck driver had been drinking, that his breath smelled of liquor, that he whooped and hollered and attempted to urinate from the running board of his truck and drive the truck at the same time. The court thought this added up to intoxication, and observed that a man did not have to reach the stage of insensibility to qualify as drunk under the Act." Citing *Lee v. Maryman*, 191 So. 733 (La. Ct. App. 1939)).

[108] 45 A.2d 542, 546 (Del. Super. 1945) (emphasis added).

[109] *Dravo Corp.*, 45 A.2d at 544.

go, when it suddenly increased speed and overturned.[110] Although sitting on the cart violated her employer's policy, the court found the act of sitting on the cart did not "remove her from a compliance with what she was supposed to do."[111] Additionally, the employee and several witnesses testified they had never read the policy (a needle in a 58-page haystack which contained 400 other rules) and had seen other coworkers sit on the carts.[112] To boot, the employer in *Dravo* "expressly disclaim[ed] any contention that the claimant was injured because of her reckless indifference to danger, or wilful intention to bring about her own injury."[113] Absent any showing of "mere amusement, skylarking or horse play," the Court held the claimant was entitled to compensation because the injury arose out of her employment.[114]

Relying on *Dravo*, the Board here found Willis's "accident occurred at a time and place where [Willis] was reasonably expected to be under the circumstances," and "the mere violation of an employer's safety policy does not necessarily place the occurrence of what would otherwise be a work accident outside the course and scope of employment."[115] While *Dravo* does stand for the proposition that a

---

[110] *Id.*

[111] *Id.* at 546.

[112] *Id.*

[113] *Id.* at 545.

[114] *Dravo Corp. v. Strosnider*, 45 A.2d 542, 544, 547 (Del. Super. 1945).

[115] Decision at 25.

deviation from company policy does not remove an employee from the course and scope of her employment, the Board takes the holding from *Dravo* too far. The Board failed to acknowledge that Willis's drinking and driving while on the job was not just a policy violation, it was also unreasonable and constituted a reckless indifference to danger.

The facts here are highly distinct from *Dravo*. True, Saulino testified that Willis was where he should have been at that time for his employment and the route where the accident occurred was part of Willis's job.[116] *Yet performing a scheduled task for UPS alone does not mean Willis's injury arose out of his employment*. As explained, the notion of "arising out of employment" "covers those things that an employee may *reasonably do or be expected to do* within a time during which he is employed."[117]

A truck driver cannot reasonably drink, nor is he expected to drink, alcohol while operating a semi-trailer weighing thousands of pounds on curving back roads at close to four in the morning. Such conduct not only violates company policy—it is also prohibited by law. Willis admitted that before the accident, after completing his delivery to Willow Grove, he consumed at least three beers on his way to Hunt

---

[116] *Id.* at 21.

[117] *Dravo Corp.*, 45 A.2d at 543 (emphasis added).

Valley.[118] Willis consumed those beers while driving a truck that "takes great skill and ample concentration,"[119] at 3:56 a.m., on a "winding road with sharp curves to the left and to the right."[120] Thus, not only did Willis's drinking and driving violate UPS's Drug and Alcohol Policy, it was manifestly *unreasonable* and *unexpected* for him to drink and drive while operating a motor vehicle on a public highway. Willis's conduct is distinguishable from the claimant in *Dravo* because, unlike sitting on a cart, Willis was recklessly indifferent to the inherent danger presented by his conduct.

Willis was aware that UPS was an alcohol-free workplace, and he knew the rules against drinking and driving.[121] As a part of the general public, Willis also knew that drinking and driving is illegal to ensure unsafe drivers remain off the road.[122] This Court finds that choosing to drink and drive at any time, let alone while on the job, driving a semi-trailer truck, is the epitome of an "I-don't care-attitude."[123] As such, this Court finds the Board erred as a matter of law in finding Willis's

---

[118] Decision at 16.

[119] *Id*. at 20.

[120] *Id.* at 11–12.

[121] Tr. 95:5–15.

[122] Tr. 95:5–15.

[123] Decision at 33 (quoting *Short v. Drewes*, 2006 WL 1743442 at *1 (Del. Super. June 21, 2006)).

accident arose out of and in the course of his employment. The Court's detailed

reasoning follows.

### 1. The Board misapplied the law and abused its discretion in finding Willis did not forfeit his compensation benefits.

At the outset, the question of whether an employee's conduct is deliberate and

recklessly indifferent to danger is "a mixed question of law and fact" reviewable by

this Court.[124] Although workers' compensation is intended to compensate

employees for on-the-job injuries, an employee may forfeit his claim to

compensation through his actions. The Delaware legislature "has chosen not to

extend [worker's compensation] to individuals whose behavior fits Section

2353(b)[,]" which "is a statement of public policy, clear and unequivocal on its face,

creating a complete defense in cases involving intoxicated employees."[125] Under

Section 2353(b), "[i]f any employee be injured as a result of the employee's own

intoxication, because of the employee's deliberate and reckless indifference to

danger . . . the employee shall not be entitled to recover . . . compensation[.]" "Before

compensation is denied, [Section 2353] requires the accident resulting in the

---

[124] *Stewart v. Rodenberg & Son Floor Coating Contr.*, 1981 WL 377355, at *3 (Del. Super. Mar. 27, 1981) (first citing *Del. Tire Ctr. v. Fox*, 401 A.2d 97 (Del. Super. 1979), *aff'd*, 411 A.2d 606 (Del. 1980); and then citing *Lobdell Car Wheel Co. v. Subielski*, 125 A. 462 (Del. Super. 1924)).

[125] *Finocchiaro v. D.P., Inc.*, 2006 WL 3873257, at *7 n.58 (Del. Super. Dec. 29, 2006) (first citing 19 *Del. C.* § 2353(b); and then quoting *Hopper v. F.W. Corridori Roofing Co.*, 305 A.2d 309, 311 (Del. 1973)); 19 *Del. C.* § 2353(b).

employee's injury to be *proximately caused by the employee's intoxication*. The burden of demonstrating that the employee was intoxicated and the employee's injury was caused by his reckless indifference to danger falls on the employer."[126]

In *Finocchiaro v. D.P., Inc.*, this Court opined that to warrant forfeiture, "the employer must show by *a preponderance of the evidence* that: (1) the employee was intoxicated; and (2) the employee's intoxication was a 'but for' cause of the accident which led to the injury."[127] "The employer meets its burden when the Board is satisfied by the preponderance of the evidence that the employee's accident was a result of his intoxication *even when other factors may have contributed to the accident*."[128] "Either direct or circumstantial evidence, or both, may be used by a fact-finder to determine the causal sequence of events. To prove proximate causation by circumstantial evidence, 'it is necessary that the conclusion of proximate causation be the only reasonable inference possible from the proven circumstances.'"[129] *Lobdell Car Wheel Co. v. Subielski* is analogously instructive.[130]

---

[126] *Id.* (first citing *Wills v. Penn Dell Salvage, Inc.*, 274 A.2d 144 (1971), *aff'd*, 282 A.2d 613 (Del. 1971); then citing *Hopper v. F.W. Corridori Roofing Co.*, 305 A.2d 309 (Del. 1973); and then citing 19 *Del. C.* § 2353(b)) (emphasis in original); *see also Johnson Controls, Inc. v. Fields*, 758 A.2d 506, 509 (Del. 2000) (explaining that "the employer has the burden of proving a factual basis for forfeiture") (citing 19 *Del. C.* § 2353).

[127] 2006 WL 3873257, at *6 (Del. Super. Dec. 29, 2006) (emphasis added).

[128] *Finocchiaro*, 2006 WL 3873257, at *5 n. 45 (quoting *Gen. Motors Corp. v. Edwards*, 1998 WL 283392 (Del. Super. Jan. 7, 1998)) (emphasis added).

[129] *Id.* at *6.

[130] 125 A. 462 (Del. Super. 1954) (centering on the "safety appliance" bar of Section 2353).

The issues there centered on the safety appliance (and thus the "willfulness") portion of the Section 2353 bar.[131] The Board declared the employer must establish the fact of willfulness by "clear and unequivocal" evidence.[132] This Court disagreed, finding "no reason why a higher degree of proof should be required of the employer" in IAB cases.[133] *Subielski* supports the proposition that the employer need only establish the fact of "reckless and indifferent" by a preponderance of the evidence.

Here, the Board frequently states that UPS failed to meet its burden of proof, but never articulates what the burden was—not once did the Board use the term "by the preponderance of the evidence" in its Decision. Rather, citing *Stewart v. Oliver B. Cannon & Sons, Inc.*, the Board stated that UPS "must *clearly* establish that actual intoxication caused the accident."[134] In so doing, the Board held the employer to a higher standard of proof than required and substituted its own speculative conclusions for substantial evidence in the record establishing both Willis's intoxication and his deliberate and reckless indifference to danger.

---

[131] *Id.* at 464.

[132] *Id.*

[133] *Id.*

[134] D.I. 15, App. A at 27; *see also Stewart v. Oliver B. Cannon & Son, Inc.*, 551 A.2d 818, 824 (Del. Super. 1988) (citing *Carey v. Bryan & Rollins*, 117 A.2d 161 (Del. Super. 1955) (explaining that the employer "must clearly establish that actual intoxication caused the accident").

### a. UPS established Willis was intoxicated and acted deliberately and recklessly at the time of the accident.

Substantial evidence in the record firmly establishes UPS proved by a preponderance of the evidence that Willis was intoxicated and acted deliberately and recklessly at the time of the crash.

In *Finocchiaro*, substantial evidence supported the Board's finding that the claimant forfeited compensation by acting *deliberately and recklessly*. The employee there had both alcohol and opiates in his system when he was injured while driving his employer's delivery van. The Board considered the claimant's BAC to determine whether his intoxication caused the accident. "Based on competent expert testimony, the Board found that [the claimant] would have been intoxicated and severely impaired in judgment, observation, attention, concentration, motor coordination, reaction and response time, visual acuity and depth perception."[135] It also found the claimant lacked credibility. Further, the claimant had a BAC 59% over the legal limit, the medical expert's testimony established that the claimant drank more than he admitted, there was no other plausible cause because the road was a straight two-lane road, the claimant was familiar with the road, and there was

---

[135] 2006 WL 3873257, at *7 (Del. Super. Dec. 29, 2006) (internal quotations omitted).

no evidence of distractions within the car itself.[136] The Board ultimately found the employer had met its burden and the claimant's intoxication caused the accident.

Here, even without Willis's BAC level and DUI conviction, UPS presented overwhelming evidence to support its position that Willis's intoxication and reckless indifference to danger proximately caused the accident.[137] Intoxication is "a situation where, by reason of drinking intoxicants, a party lacks the normal use of his physical or mental faculties, rendering him incapable of acting in the manner in which an ordinarily prudent and cautious man, using reasonable care, would act under the circumstances."[138] At the Hearing, uncontested evidence established: (1)

---

[136] *Id.* at *6.

[137] *See Guilfoil v. State*, 135 A.3d 78 (Del. 2016) (TABLE) (finding harmless error where the defendant's HGN test was admitted without a proper evidentiary foundation in view of the overwhelming evidence in support of DUI: the defendant admitted to drinking; had several open beer cans inside his truck; misspelled his name; glassy bloodshot eyes; difficulty maintaining his balance; slurred speech; a strong odor of alcohol; difficulty manipulating his fingers when opening his wallet; and had urinated in his pants; and a PBT and blood test indicating BACs higher than the legal limit); *DiSabatino v. State*, 808 A.2d 1216, 1224 (Del. Super. 2002) (finding "an abundance of evidence" supporting DUI where the defendant admitted to drinking, smelled of alcohol, had glassy bloodshot eyes). *Cf. Bease v. State*, 884 A.2d 495, 498 (Del. 2005) (finding a basis for probable cause where the defendant committed a traffic violation, spoke in a rapid manner, smelled of alcohol, had glassy bloodshot eyes, and admitted to drinking); *Verde v. Simpler*, 2021 WL 2644217, at *3 (Del. Super. June 25, 2021) (finding same where the defendant drove erratically, committed a traffic violation, smelled of alcohol, had glassy bloodshot eyes, failed to make eye contact, and admitted to drinking); *DeLoach v. State*, 2012 WL 2948188, at *4 (Del. Super. July 16, 2012) (finding same where the defendant left his vehicle on the curb, failed the alphabet test, the "finger to nose" test, and a field sobriety test).

[138] *Stewart v. Oliver B. Cannon & Sons, Ind.*, 551 A.2d 818, 822 (Del. Super. Ct. 1988) (citing *Black's Law Dictionary*)).

Willis "consumed some beer on his way to Hunt Valley," (2) both officers could smell alcohol on Willis and in the cab of the truck, (3) Willis was seen throwing beer cans out of his truck and one cold can remained on the baseboard of the truck, (4) Willis defecated on himself, (5) Willis struggled with balance and could not hold himself upright, and (6) Willis was arrested for DUI after crashing into the guardrail and refusing to take a field sobriety test.[139] While Officer Scott admitted that concussion symptoms are similar to signs of intoxication,[140] Dr. Zaslavasky testified that the CT scan of Willis's head was fairly normal and only displayed signs of age-related changes.[141] Notably, "the Board reject[ed] the argument that [Willis] sustained a concussion that would account for his presentation."[142] In sum, the record unequivocally shows that Willis drank intoxicants and lacked the "normal use of his physical or mental faculties."

Yet despite the evidence presented, the Board relied on its own speculative observations in determining that Willis was not intoxicated at the time of his accident. The Board speculated that the alcohol Willis was drinking was a "light

---

[139] Decision at 28.

[140] *Id.* at 16, 17–19, 28.

[141] *Id.* at 6, 21.

[142] *Id.* at 28, n.7 ("The Board acknowledges Officer Scott testified that a concussion could present similarly to someone who is intoxicated and recognizes [Willis] testified he struck his head and was diagnosed the next day at Inspira as having a closed head injury. However, the Board rejects the argument that [Willis] sustained a concussion that would account for his presentation.").

37

beer," and it was unclear about when Willis consumed the beer and over what duration.[143] The Board further speculated "it is possible that at least some of the empty cans may have been 'cool to the touch' because after consuming the beer, [Willis] placed the cans back into the cooler[.]"[144]

The Board disregarded trained officers' testimony about their first-hand experience interacting with Willis (smelling of alcohol, sweating profusely, unable to stand, and having defected on himself) and instead determined that, based on their own viewing of the officers' bodycam footage, Willis appeared "cognizant and aware" and "[h]is motor function did not appear impaired[,]" and "[he wa]s tall."[145] Perhaps foreshadowing this Court's review, however, the Board conceded that "a person can appear differently in person than what [was] captured on camera," and "the audio was not complete."[146]

That a man can stand is not evidence he is sober, and mere speculation is never substantial evidence[147] When the Board's speculation is juxtaposed against

---

[143] *Id*. at 29.

[144] *Id*.

[145] Decision at 30-31.

[146] *Id*. at 30.

[147] *Flowers v. Daimler Chrysler Corp.*, 2005 WL 2303811, at *3 (Del. Super. Sept. 20, 2005) (citing *Strikeleather v. Zapacosta*, 293 A.2d 572 (Del. 1972)) ("An award by the Board must be based on competent and relevant testimony. Without such testimony, the threshold requirement of substantial evidence will not be accomplished.").

substantial evidence in the form of Willis's admissions and UPS's evidence, this Court reckons the Board abused its discretion in finding Willis was not intoxicated at the time of his accident. Considering all the evidence in the record, a reasonable mind would not have concluded that Willis was sober at the time of the accident, nor that his conduct was recklessly indifferent to the danger of drinking while driving.

### b. UPS established Willis's intoxication and deliberate and reckless indifference to danger proximately caused the accident.

Substantial evidence in the record shows UPS met its burden of proving by a preponderance of the evidence that Willis's intoxication and deliberate and reckless indifference to danger proximately caused the accident; thus, the Board abused its discretion in concluding otherwise.

The Board abused its discretion by applying the wrong causation standard and inserting its own speculative theory regarding the cause of the crash. Taking Saulino's testimony that "drivers are not supposed to swerve the type of truck [Willis] was driving because it would be nearly inevitable the driver would lose control of the truck and get into an accident"[148] and Officer Scott's testimony that "[Willis] *could* have swerved to avoid hitting deer,"[149] the Board reasoned "*if* in fact, [Willis] swerved the truck to avoid hitting deer, swerving the truck more likely

---

[148] Decision at 30.

[149] *Id.* at 32 (emphasis added).

39

would have resulted in an accident regardless of intoxication."[150] This logic fails for two reasons. It shows the Board applied an incorrect legal standard to UPS's burden of proof regarding causation—that the employer was required to establish intoxication was the *exclusive* cause of the accident—rather than *a proximate cause* as reasoned in *Finocchiaro*. Next, the Board's own factual speculation does not outweigh substantial evidence to the contrary in the record.

First, it is true that Section 2353 forfeiture "applies only where the accident resulting in injury is proximately caused by intoxication."[151] But the "employer meets its burden when the Board is satisfied by the preponderance of the evidence that the employee's accident was a result of his intoxication *even when other factors may have contributed to the accident*."[152] Circumstantial evidence may be used by the factfinder to determine the causal sequence of events.[153] "To prove proximate causation by circumstantial evidence, 'it is necessary that the conclusion of proximate causation be the only reasonable inference possible from the proven circumstances.'"[154] It follows that UPS needed to show by a preponderance of the

---

[150] *Id.* at 31 (emphasis added).

[151] *Wills v. Penn Dell Salvage, Inc.*, 274 A.2d 144, 145 (Del. Super. 1971), *aff'd sub nom. Penn Del Salvage, Inc. v. Wills*, 282 A.2d 613 (Del. 1971).

[152] *Id.* at *5 n. 45 (quoting *Gen. Motors Corp. v. Edwards*, 1998 WL 283392 (Del. Super. Jan. 7, 1998)) (emphasis added).

[153] *Finocchiaro v. D.P., Inc.*, 2006 WL 3873257, at *6 (Del. Super. Dec. 29, 2006).

[154] *Id.* at *6.

evidence that Willis's intoxication or reckless indifference proximately caused the accident—not that it was the *exclusive* cause. *Finocchiaro* counsels *that other factors may also contribute to the accident*.[155]

The Board's reliance on *Stewart v. Oliver B. Cannon & Sons* for its causation analysis is misplaced.[156] In *Oliver*, the Board awarded recovery to a claimant who fell from a scaffolding while working as a painter for the employer. The scaffolding did not have a safety railing, and the claimant was not using a safety harness at the time of his fall. He also admitted to drinking a couple of 12-ounce cans of beer during his lunch break about 2.5 hours before his fall. But a couple of hours after the incident, BAC test results showed the claimant may have consumed more alcohol than he let on. The Court used the preponderance of the evidence standard to determine whether the claimant's intoxication proximately caused the accident, and, in turn, his injury.[157] "Three eyewitnesses state that they did not see [the claimant] drink on the job and that he did not appear intoxicated prior to the accident. The Board found this testimony, as well as that of the [claimant], to be credible."[158] Further testimony established that the scaffolding was "of a portable nature and

---

[155] *Id.* at *5 n. 45 (quoting *Gen. Motors Corp. v. Edwards*, 1998 WL 283392 (Del. Super. Jan. 7, 1998)) (emphasis added).

[156] 551 A.2d 818, 820 (Del. Super. 1988); Decision at 27.

[157] *Oliver*, at 820.

[158] *Id.* at 822.

unsturdy."[159]  The "work rules required a safety line to be used; however, the superintendent was not familiar with the rules, nor d[id] the record indicate that the other witnesses had a knowledge of the work rules."[160]  "If the use of the safety line was discretionary, failure to use it might be careless, but not willful."[161]  In the end, the Court held there was substantial evidence to support the Board's findings "that the employer failed to prove that the accident was proximately caused by the employee's 'wilful' failure to use safety devices;" and that the employer "failed to meet its burden of proving that [the employee] was intoxicated and that his intoxication was a direct, proximate cause of the accident, by a preponderance of the evidence."[162]  *Oliver* is inapposite.  That case analyzes the "wilful failure or refusal to use a reasonable safety appliance" portion of Section 2353(b), which requires an entirely different analysis from the "intoxication" and "deliberate and reckless indifference to danger" standard here.  *Finocchiaro* sets forth the standards that should have been applied here.

Second, by speculating about the cause of the crash and injecting its own observations regarding Willis's condition based on sometimes soundless bodycamera footage, the Board turned a blind eye to the uncontroverted evidence in

---

[159] *Id.*

[160] *Id.* at 823.

[161] *Stewart v. Oliver B. Cannon & Sons*, 551 A.2d 818, 824 (Del. Super. 1981).

[162] *Id.* at 823.

the record establishing Willis's intoxication or reckless indifference was a contributing cause of the crash.

In *Stewart v. Rodenberg & Son Floor Coating Contractor*, the Board denied compensation.[163] The employer observed the claimant contractor taking frequent breaks, staggering, and drinking beer, so he fired him and instructed him to leave the job site due to his voluntary intoxication. But the claimant remained on the premises and fell as he was walking across the floor 30 minutes later. The Court noted "[b]efore compensation is denied, [Section 2353] requires the accident resulting in the employee's injury to be *proximately caused* by the employee's intoxication."[164] The court explained the employers did not observe the claimant "before the fall to determine that [he] was still unsteady on his feet. Their first observation of [the claimant] was *after* [he] had fallen."[165] "There was testimony by all witnesses that the floor was extremely slippery from the chemicals applied to it," and several others had fallen before the claimant fell.[166] The Court concluded "there is no evidence by which the Board could determine that [the employer] had met its burden to show

---

[163] 1981 WL 377355, at *1 (Del. Super. 1981).

[164] *Rodenberg*, at *3 (emphasis in original).

[165] *Id.* (emphasis in original). This finding is puzzling, however, due to one of the employers observing the claimant drinking thirty minutes before he fell. *See id.* It seems the Court meant nobody saw the claimant drinking immediately before he fell.

[166] *Id.* at *1 (workers "began applying an acid chemical substance to the floor to prepare the surface for the application of the coating[, and a]ll parties conceded that this substance made the floor extremely slippery").

that, but for [the claimant]'s intoxication, he would not have fallen and injured himself."[167]   Finding no substantial evidence to support that the claimant's intoxication was the cause of his injuries, the Court reversed.[168]   Here, unlike *Rodenberg*, the uncontroverted testimony establishes that Willis was driving while intoxicated and such intoxication proximately caused the crash.

The uncontroverted direct and circumstantial evidence reflects there were no hazards or distractions apparent at the time of the accident. Road conditions were good, the surface was dry, the weather was clear, the area was dark but dimly lit, and there were no noted driving distractions.[169]   Willis admitted he usually drinks beer and drives on the way home from work; attended AA meetings to curb his drinking; and was drinking and driving sometime before the crash. Law enforcement officers testified that after the crash Willis ignored law enforcement commands and threw open beer cans out of the window; smelled of alcohol, slurred his speech, could not hold himself upright, and defecated on himself; still had a partially full beer near him that was open and cool to the touch and another one in the cooler; and refused field sobriety tests. Unlike the officers, Willis testified inconsistently regarding what he remembered and whether he swerved to avoid hitting a deer. The Board noted

---

[167] *Id.* at *4.

[168] *Id.*

[169] Decision at 31.

"credibility issues" surrounding Willis's version of the story.[170]  And even if Willis's recollection of the deer is accurate, Willis had driven a semi-truck for 38 years[171] and was "familiar with the nuances of the road."[172]  While one of these facts in a vacuum might not be enough, the constellation of facts here establish Willis's intoxication or deliberate and reckless indifference to danger *proximately caused* the accident by a preponderance of the evidence.

Regrettably, the Board's decision in this case "exceeded the bounds of reason in view of the circumstances."[173]  The Board erroneously relied on its own speculation instead of the substantial evidence in the record.  UPS established Willis was intoxicated or recklessly indifferent to the danger presented by drinking and driving.  Likewise, when all the evidence here is considered, this Court must conclude the Board abused its discretion by finding no causation was established.  Finally, to affirm the Board's Decision would set a dangerous precedent that employees can get away with driving impaired on the job—as long as it's light beer—despite overwhelming evidence to the contrary.

---

[170] *Id.* at 31.

[171] *Id.* at 11.

[172] *Id.* at 12.

[173] *See Trujillo v. Atl. Bldg. Assocs.*, 2017 WL 2591409 at *4 (Del. Super. June 7, 2017) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

45

## V.     CONCLUSION

This Court concludes the Board erred as a matter of law and abused its discretion by awarding compensation to Willis.  Substantial evidence supports that Willis's intoxication proximately caused the accident.  Willis was acting outside the course and scope of his employment by violating UPS's Drug Alcohol Policy and statutes aimed at preventing drunk driving.  Thus, the Board's Decision denying in part Claimant's compensation for medical expenses is hereby **REVERSED** consistent with this opinion.

**IT IS SO ORDERED.**

The Honorable Kathleen M. Vavala